PD-0099-15
COURT OF CRIMINAL APPEALS
AUSTIN, TEXAS
Transmitted 3/13/2015 11:26:10 AM
Accepted 3/13/2015 1:49:30 PM
ABEL ACOSTA
CLERK

No. PD-0099-15

IN THE COURT OF CRIMINAL APPEALS OF TEXAS, AT AUSTIN

## Alejandro John Garcia

Appellant

v.

## The State of Texas

Appellee

On Appeal from 368th District Court of Williamson County in Case No. 11-216-K368, the Hon. Burt Carnes, Judge Presiding, and the Opinion of the Third Court of Appeals in Case No. 03-12-00781-CR, Delivered December 11, 2014

# Petition for Discretionary Review

FILED IN
COURT OF CRIMINAL APPEALS

March 13, 2015

ABEL ACOSTA, CLERK

Submitted by:

**David A. Schulman**
Attorney at Law
Post Office Box 783
Austin, Texas 78767-0783
Tel. 512-474-4747
Fax: 512-532-6282
eMail: zdrdavida@davidschulman.com
State Bar Card No. 17833400

**John G. Jasuta**
Attorney at Law
Post Office Box 783
Austin, Texas 78767-0783
Tel. 512-474-4747
Fax: 512-532-6282
eMail: lawyer1@johngjasuta.com
State Bar Card No. 10592300

Attorneys for Alejandro John Garcia

# Identity of Parties and Counsel

Pursuant to Rule 38.1(a), Rules of Appellate Procedure ("Tex.R.App.Pro."), the following is a complete list of the names and addresses of all parties to the trial court's final judgment and their counsel in the trial court, as well as appellate counsel, so the members of the Court may at once determine whether they are disqualified to serve or should recuse themselves from participating in the decision of the case, and so the Clerk of the Court may properly notify the parties to the trial court's final judgment or their counsel, if any, of the judgment and all orders of the Court of Appeals.

## Appellant

Alejandro John Garcia
TDCJ-ID No. 1818028
1800 Luther Drive
Navasota, Texas 77868

| Trial Counsel | Appellate Counsel |
|---|---|
| **Richard Segura** | **David A. Schulman** |
| SBN 00788384 | SBN 17833400 |
| **Kathryn Ryle** | **John G. Jasuta** |
| SBN 00797365 | SBN 10592300 |
| 707 West 14th Street | Post Office Box 783 |
| Austin, Texas 78701 | Austin, Texas 78767-0783 |

## State of Texas

Hon. Jana Duty
District Attorney
Williamson County Justice Center
405 Martin Luther King 2FL
Georgetown, Texas 78626

| Trial | Appellate Counsel |
|---|---|
| **Robert McCabe** | **Deni Garcia** |
| SBN 24026830 | SBN 24027175 |
| **Lytza Rojas** | **John Prezas** |
| SBN 24046750 | SBN 24041722 |

i

# Table of Contents

Identity of Parties and Counsel . . . . . . . . . . . . . . . . . . . . . . . . . . .   i

Index of Authorities. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . iv

Statement Regarding Oral Argument. . . . . . . . . . . . . . . . . . . . . . vii

Statement of the Case. . . . . . . . . . . . . . . . . . . . . . . . . . . . vii

Statement of Procedural History. . . . . . . . . . . . . . . . . . . . . . vii

Facts of the Case. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

Ground for Review Number One Restated. . . . . . . . . . . . . . . . 3

**The Court of Appeals Erred When it Concluded Appellant Failed to Show the Defense's Expert Testimony "Was Properly Applied" to Appellant**.

Facts Relevant to First Ground for Review. . . . . . . . . . . . . . . . . 3

Summary of the Argument - First Ground for Review . . . . . . . 5

Argument & Authorities - First Ground for Review. . . . . . . . . . 6

    The Court of Appeals Mis-Interpreted or Mis-Applied the Appropriate Standard . . . . . . . . . . . . . . . . . . . . . . . . . .   6

    The Evidence was Necessary to Counter the State's Arguments . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   15

Conclusion - First Ground for Review. . . . . . . . . . . . . . . . . . 18

i

# Table of Contents
### (CONT)

Ground for Review Number Two Restated. . . . . . . . . . . . . . 18

**The Court of Appeals Erred When it Resolved Appellant's Claim of Charge Error Without Reference to or Application of _Almanza v. State_.**

Facts Relevant to Second Ground for Review. . . . . . . . . . . . 18

Summary of the Argument - Second Ground for Review. . . . . 20

Argument & Authorities - Second Ground for Review. . . . . . 20

Conclusion - Second Ground for Review.. . . . . . . . . . . . . . 23

Prayer. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 24

Certificate of Compliance and Delivery. . . . . . . . . . . . . . . . 25

# Index of Authorities

**Federal Cases**:

***Daubert v. Merrell Dow Pharmaceuticals, Inc.***,
    509 U.S. 579 (1993). . . . . . . . . . . . . . . . . . . . . . . . . . . 7, 8

**Texas Cases**

***Allen v. State***, AP-74,951
    (Tex.Cr.App.; June 28, 2006). . . . . . . . . . . . . . . . . . . . 11

***Almanza v. State***, 686 S.W.2d 157
    (Tex.Cr.App. 1985) . . . . . . . . . . . . . . . . . . 18, 20-22, 24

***Arline v. State***, 721 S.W.2d 348 (Tex.Cr.App. 1986). . . . . . . 23

***Bass v. State***, 270 S.W.3d 557 (Tex.Cr.App. 2008). . . . . 16, 17

***Cargill v. State***, AP-76,189
    (Tex.Cr.App. November 19, 2014). . . . . . . . . . . . . . . . . . 16

***E.I. du Pont de Nemours & Co. v. Robinson***,
    923 S.W.2d 549 (Tex. 1995). . . . . . . . . . . . . . . . . . . . . 5, 7

***Garcia v.  State***, 03-12-00781-CR
    (Tex.App. - Austin; December 11, 2014). . .  vii, 5, 8, 19, 20

***Griffith v. State***, 983 S.W.2d 282 (Tex.Cr.App. 1998). . . . . . 10

***Johnson v. State***, 739 S.W.2d 299 (Tex.Cr.App. 1987). . . . . 21

***Jordan v. State***, 928 S.W.2d 550 (Tex.Cr.App. 1996). . . 12-14

# Index of Authorities
(CONT)

**Texas Cases** (CONT):

***Kelly v. State***, 824 S.W.2d 568 (Tex.Cr.App. 1992). . . . . 5, 7, 8

***Mata v. State***, 03-12-00476-CR
(Tex.App. - Austin, June 24, 2014). . . . . . . . . . . . . . . . 16

***McBride v. State***, 862 S.W.2d 600
(Tex.Cr.App. 1993). . . . . . . . . . . . . . . . . . . . . . . . . . 10, 11

***Powell v. State***, 63 S.W.3d 435 (Tex.Cr.App. 2001). . . . . 16, 17

***Renteria v. State***, 206 S.W.3d 689 (Tex.Cr.App. 2006). . . . . 16

***Sexton v. State***, 93 S.W.3d 96 (Tex.Cr.App. 2002). . . . . . . . . 8

***Spence v. State***, 795 S.W.2d 743 (Tex.Cr.App. 1990). . . . . . 11

***Tillman v. State***, 354 S.W.3d 425 (Tex.Cr.App. 2011). . . . 8, 12

***Vasquez v. State***, 389 S.W.3d 361
(Tex.Cr.App. 2012). . . . . . . . . . . . . . . . . . . . . . 19-22, 24

***Walters v. State***, 247 S.W.3d 204 (Tex.Cr.App. 2007). . . . . . 16

**Texas Statutes / Codes**:

Rules of Evidence

Rule 401.. . . . . . . . . . . . . . . . . . . . . . . . . . . 15

Rule 404(b) .. . . . . . . . . . . . . . . . . . . . . . . . 15

Rule 702 . . . . . . . . . . . . . . . . . . . . . . . . . . 13

Rule 705(b) .. . . . . . . . . . . . . . . . . . . . . . . . 4

## Statement Regarding Oral Argument

Because of complexity of the expert witness issue involved, the undersigned believe that oral argument will benefit the parties and assist the Court. Appellant therefore requests the opportunity to present oral argument in this case.

## Statement of the Case

This case involves the denial of the right to put on a full defense, to introduce evidence in support of that defense, and to have the jury instructed in a meaningful way, such as to allow the jury to give effect to the evidence presented.

## Statement of Procedural History

Appellant was charged by indictment with the offenses of aggravated sexual assault of a child, a first (1st) degree felony (Count I) and Indecency with a Child by Contact (Count II), a second (2nd) degree felony, in Cause No. 11-216-K368 in the 368th District Court of Williamson County, Texas. He was acquitted on Count I and convicted on Count II, and sentenced to confinement for ten (10) years. Notice of Appeal was timely given

on November 20, 2012.  The Court of Appeals' opinion from which review is sought was delivered by the Third Court of Appeals. *Garcia v.  State*, 03-12-00781-CR (Tex.App. - Austin; December 11, 2014).  By previous Order of this Court, this petition is timely filed if presented to the Clerk of the Court on or before March 13, 2015.

No. PD-0099-15

IN THE COURT OF CRIMINAL APPEALS OF TEXAS, AT AUSTIN

## Alejandro John Garcia
Appellant

v.

## The State of Texas
Appellee

On Appeal from 368th District Court of Williamson County in Case No. 11-216-K368, the Hon. Burt Carnes, Judge Presiding, and the Opinion of the Third Court of Appeals in Case No. 03-12-00781-CR, Delivered December 11, 2014

# Petition for Discretionary Review

TO THE HONORABLE COURT OF CRIMINAL APPEALS:

COMES NOW, Alejandro John Garcia, Appellant in the instant cause, by and through David A. Schulman and John G. Jasuta, his undersigned attorneys, and respectfully files this "Petition of Discretionary Review," and would show the Court as follows:

## Facts of the Case
(Gleaned From the Opinion of the Court of Appeals)

Appellant's nine-year-old daughter went for an overnight visit to the apartment Appellant shared with his girlfriend and their

four-year-old son. She watched a movie with her brother in her brother's room while Appellant watched a movie in the living room with the girl's uncle, smoking marijuana. Appellant's girlfriend was at work that evening.

Appellant's daughter testified that she ordinarily slept on the couch during her visits and that, after the movies finished, Appellant fixed the couch as her bed that night. They watched some television and, at around 9:36 p.m., she fell asleep on the couch. She said that Appellant also fell asleep on the couch, which was unusual. She woke up later when Appellant touched her, unbuckled his belt, then did "something really gross." She testified, "He pulled down my pants and stuck his middle part into my bottom. And then he put his hands on my front part." She testified that he put his "middle part inside my butt." She testified that after doing those things "he woke up, and he said, 'Oh, my God.' And then he started wiping my butt and pulled up my pants. And then he went and threw the paper towel away. . . . [H]e told

2

me to take a shower, but I didn't." She said that Appellant said, "What the F?" and "Why did I do that?" to himself.

The child testified that he did not tell her to keep quiet, did not threaten her, did not try to bribe her, and did not blame her. She said that she knew Appellant was asleep when these events occurred "because he wouldn't have done that if he was awake."

The girl's grandparents came and picked her up later that night and delivered her to her mother, who then immediately took the child to the hospital for a checkup. Because of the nature of the actions reported to hospital personnel, Austin Police were notified.

## Ground for Review Number One Restated

**The Court of Appeals Erred When it Concluded Appellant Failed to Show the Defense's Expert Testimony "Was Properly Applied" to Appellant.**

## Facts Relevant to First Ground for Review

At opening, Mr. Segura promised the jury, without objection, they would hear evidence that Appellant was asleep when the acts occurred (RR Vol. 3, P. 42). To accomplish this, Appellant called

Dr. Michel Bornemann, a medical doctor who specializes in the study of parasomnia.

When Appellant called Dr. Bornemann, the State requested and obtained a hearing under Rule 705(b), Tex.R.Evid. Through Dr. Bornemann, Appellant sought to offer evidence that he was essentially sleepwalking when he touched his daughter and, therefore, he lacked the requisite intent or voluntariness to commit the crime.

At the close of the *voir dire* examination, the State objected and argued that it was based on a novel and unreliable scientific theory that could mislead the jurors. The State contended the theory lacked diagnostic criteria and support in the medical community and that Dr. Bornemann did not "appropriately diagnose this defendant as having any disorder."

The trial court refused to admit Dr. Bornemann's testimony. At that time, the trial court stated:

```
Obviously, based on the motion for continuance back in the
summer, I knew that this was going to be an issue or probably
would be an issue, and so I've been looking at it as we've
progressed through the trial of the case this week.
```

4

> It's very interesting. But what he's really here to say is the defense story which he gave the night in the videotape we've all heard he's being truthful. And then it goes -- and that's based solely on his and his present girlfriend's -- or his interview of the defendant and his present girlfriend, not on all the scientific studies that he talked about if it were a clinical case.
>
> I'm going to sustain the State's objection. If you need a further bill, if he'll stick around, we'll do that at the close of business today.

RR Vol. 4, P. 115.

On appeal, Appellant claimed the trial court erred by sustaining the State's objection to Dr. Bornemann's testimony. The Court of Appeals rejected Appellant's arguments, holding Appellant failed to demonstrate the admissibility of Dr. Bornemann's testimony. *Garcia*, slip op. at 5.

## Summary of the Argument
## First Ground for Review

The *Daubert* / *Robinson* / *Kelly* standard does not require the testifying expert to have conducted scientific testing on the subject of his testimony, merely that he has applied the particular methodology when formulating an opinion. Additionally, otherwise inadmissible evidence becomes admissible if the actions of the opposing party "open the door."

5

# Argument & Authorities - First Ground for Review

## A

## The Court of Appeals Mis-Interpreted or Mis-Applied the Appropriate Standard

The Rules of Evidence favor admission of all relevant evidence. ***Montgomery v. State***, 810 S.W.2d 372 (Tex.Cr.App. 1990). Under Rule 401, relevant evidence is evidence which has "any tendency to make the existence of any fact of consequence to the determination of the action more probable or less probable than it would be without the evidence." ***Bekendam v. State***, 441 S.W.3d 295, 303 (Tex.Cr.App. 2014)(FN 4).

For expert testimony to be admissible, the following requirements must be met:

❶ the expert's testimony must be based on sufficient facts or data;

❷ the expert's testimony must be the product of reliable principles and methods, and

❸ the expert must apply the principles and methods reliably to the facts of the case.

See ***Daubert v. Merrell Dow Pharmaceuticals, Inc.***, 509 U.S. 579, 591 (1993); ***E.I. du Pont de Nemours & Co. v. Robinson***, 923 S.W.2d 549, 556-557 (Tex. 1995); ***Kelly v. State***, 824 S.W.2d 568, 571-572 (Tex.Cr.App. 1992). Additionally, ***Kelly*** also identified a non-exclusive list of factors which could influence a trial court's determination of reliability, including

❶ the extent to which the theory and procedure are accepted as valid by the relevant scientific community;

❷ the technique's potential rate of error;

❸ the availability of experts to test and assess the method or technique;

❹ the clarity and precision with which the underlying scientific premise and approach can be explained to the court; and

❺ the knowledge and experience of the person(s) who applied the methodology on the occasion in question.

***Kelly***, 824 S.W.2d at 573. Under ***Kelly***, the proponent of scientific evidence bears the burden of proving to the trial court, by clear and convincing evidence, that the evidence is sufficiently

relevant and reliable to assist the jury in determining a fact in issue. *Kelly*, 824 S.W.2d at 573.

Relying on *Sexton v. State*, 93 S.W.3d 96, 100 (Tex.Cr.App. 2002), the Court of Appeals held Appellant failed to demonstrate the admissibility of Dr. Bornemann's testimony. "We cannot say that the trial court abused its discretion by excluding Dr. Bornemann's testimony because Garcia failed to show by clear and convincing evidence that a valid technique for diagnosing parasomnia was properly applied to him." *Garcia*, slip op. at 5.

Appellant acknowledges that *Daubert* and *Kelly*, as well as their various progeny, require an expert to fit his testimony to the facts of the case. See *Tillman v. State*, 354 S.W.3d 425 (Tex.Cr.App. 2011). However, the substance of both the trial court's and the Court of Appeals' ruling was that, in this case, Dr. Bornemann had not applied a valid technique when formulating his opinion. It is clear that both courts based this on Dr. Bornemann's acknowledgment that he did not perform any clinical tests on Appellant. What both courts ignored is that Dr.

8

Bornemann testified unequivocally that such testing was not necessary.

Q. (Mr. McCabe) Did you perform any studies on Mr. Garcia?

A. (Dr. Bornemann) No formal tests or studies were performed.

Q. Wouldn't you agree that you authored a paper -- co-authored a paper called "Violence in Sleep" out of the Oxford Journals; is that correct?

A. Published by -- this is the one you're looking at.  This was published in the scientific journal, Brain.

Q. Yes. In 2010?

A. Correct.

Q. Okay. You were a co-author of that study?

A. That's correct.

Q. Wouldn't you agree that when you talk about -- there is a subsection called "History and Physical Examination" under "Diagnostic Procedures" about halfway through that paper. It says, "The first step in diagnosing a sleep disorder associated with violence is obtaining a complete history preferably from both the patient and the bed partner." You did those things; is that right?

A. Well, I interviewed him. A physical examination was not performed, nor was it necessary. That is a comment related to the condition as a clinical entity and not necessarily as a forensic entity.

Q. So when it says, "The clinical history should be followed by a general physical, neurological, and psychiatric examinations," none of those things were done in this case?

A. A physical examination wasn't performed.  It was not contributory to the review of the case. And there was no evidence to support further inquiry into a psychiatric condition.

Q. It references -- forgive me if I pronounce this wrong -- polysomnography.

A. Correct. We have to keep in mind that that paper also is not particularly focused on sleepwalking. It also comments upon

9

unusual epilepsy. So, again, this is a clinical paper looking at violence that arises from sleep which is not necessarily particular or specific to sleep. It can also incorporate neurologic conditions such as epilepsy.

Q. But there's an entire section on here on arousal disorders, correct?

A. That's correct.

Q. Is that what we're talking about here is an arousal disorder?

A. We are talking about an arousal disorder which is a subset of parasomnia.

Q. So this paper is relevant to your testimony today?

A. It is helpful, absolutely.

Q. And under "Polysomnography," it says, "an extensive polygraphic study with a multichannel scalp EEG, monitoring all four extremities in continuous, time-schychronized audio-visual recording is essential."

A. Essential from a clinical diagnosis. From a forensic, legal perspective, a polysomnography that's not associated with the allegation would not be able to determine what happened on that particular evening. I could certainly do a polysomnography, or a sleep test, and find that he's a sleepwalker. But that only tells us he's a sleepwalker. That's not necessarily what may have occurred on the evening of the event. So the information to determine -- render medical opinion which is well founded in our field is based upon the behavioral -- the characteristic behavioral patterns and also the specifics to the degree of consciousness and awareness in order to render an opinion related to a particular incident, not necessarily a global clinical issue which is particularly what that paper focuses on.

The Court of Criminal Appeals has repeatedly recognized that testimony from mental health experts is relevant to the issue of future dangerousness. See *Griffith v. State*, 983 S.W.2d 282, 288 (Tex.Cr.App. 1998); see also *McBride v. State*, 862 S.W.2d 600,

10

608 (Tex.Cr.App. 1993). The Court has also repeatedly made clear that there is no requirement that the mental health expert offering an opinion regarding whether a particular defendant will constitute a danger in the future have ever personally interviewed that defendant. *Spence v. State*, 795 S.W.2d 743, 762-763 (Tex.Cr.App. 1990); see also *Allen v. State*, AP-74,951 (Tex.Cr.App.; June 28, 2006)(not designated for publication).[1]

Being the pivotal "life or death" question in a capital case, it is clear that whether there is a probability a particular defendant "would commit criminal acts of violence that would constitute a continuing threat to society . . .," is at least as important a question as whether Appellant's behavior on the night in question was the result of parasomnia. If a personal interview is not required when an expert is called to offer his or her opinion on "future dangerousness" in the death penalty setting, certainly conducting a "clinical study" is not required when an expert is

---

[1] In *Allen*, there were concurring opinions by Judge Womack and Judge Johnson. Neither are important to this issue.

11

called to offer an opinion as to whether an individual is a parasomniac.

Additionally, as set out in *Tillman*, relevance is a "looser notion than reliability," and is "a simpler, more straight-forward matter to establish." *Tillman*, 354 S.W.3d at 438. The relevant inquiry is whether evidence "will assist the trier of fact and is sufficiently tied to the facts of the case." *Jordan v. State*, 928 S.W.2d 550, 555 (Tex.Cr.App. 1996).

In *Jordan*, the Court specifically addressed the "fit" aspect of the relevance inquiry. There, the proffered expert "answered questions about the specific facts of the case and how they might be affected by the factors he testified to," "stated his opinion about the reliability of the eyewitness identifications," and "identified facts in the case that he believed impacted those identifications." *Jordan*, 928 S.W.2d at 556. However, the expert "did not testify about several factors that might have affected the reliability of the eyewitness identifications," nor did he "interview the witnesses or examine certain pieces of evidence." *Jordan*, 928 S.W.2d at 555-

12

556. Nevertheless, the Court held that, although the expert "did not testify as to every conceivable factor that might affect the reliability of eyewitness identification present," his testimony "was sufficiently tied to the facts to meet the simple requirement that it be 'helpful' to the jury on the issue of eye witness reliability." *Jordan*, 928 S.W.2d at 556.

In *Jordan*, the Court explained that the question under Rule 702, Tex.R.Evid., is "not whether there are some facts in the case that the expert failed to take into account, but whether the expert's testimony took into account enough of the pertinent facts to be of assistance to the trier of fact on a fact in issue." *Jordan*, 928 S.W.2d at 556. Further, the Court noted that the expert's failure to account for some facts "is a matter of weight and credibility, not admissibility." *Jordan*, 928 S.W.2d at 556.

In essence, therefore, what the *Jordan* Court ruled was that, whether an expert is correct in his or her opinion is a fact question for the jury to decide. In this case, Dr. Bornemann specifically testified that he did have "specialized knowledge that's scientific,

13

technical, or otherwise that will assist the jury in understanding evidence in this case and determine a fact in issue in this case" (RR Vol. 4, PP. 102-103).

In this case, the trial court undertook questioning Dr. Bornemann - the final questions he would answer. The following occurred:

```
(THE COURT): Without the window dressing, tell me what you are
here to render a paid expert opinion for?

(Dr. Bornemann): Right. I'm here to review and support that
Mr. Garcia's behavior was without motivation, intent, and
purposefulness because his behavior is consistent with
parasomnia.
```

RR Vol. 4, P. 110. More specifically, as he had previous testified, as part of his engagement in this case, Dr. Bornemann had rendered a "formal medical opinion related to this case," and that opinion "indeed supports a sleep disorder, parasomnia with sexual attributes" (RR Vol. 4, P. 87).

Under the rationale of *Jordan*, whether he was correct or not was a question for the jury. Consequently, his opinion, that Appellant's behavior was consistent with parasomnia (RR Vol. 4, P. 110), was relevant to the jury's inquiry, because it tended to

14

make "the existence of any fact of consequence to the determination of the action more probable or less probable than it would be without the evidence." Rule 401, Tex.R.Evid. The trial court erred by refusing to permit Dr. Bornemann's testimony to be heard by the jury, and the Court of Appeals erred by failing to so find.

B

**The Evidence was Necessary to Counter the State's Arguments**

Appellant further asserts that even otherwise inadmissible evidence becomes admissible when it is necessary to counter the theory or argument of the opponent. See, for example, the ample amount of case law providing that evidence of extraneous bad acts, which is otherwise rendered inadmissible by Rule 404(b), Tex.R.Evid., becomes admissible when it is necessary to counter an opponent's theory.

The Court has often said that evidence of a person's bad character may be admissible when it is relevant to a non-character conformity fact of consequence in the case, such as rebutting a

15

defensive theory. ***Cargill v. State***, AP-76,189 (Tex.Cr.App. November 19, 2014)(not designated for publication), citing ***Powell v. State***, 63 S.W.3d 435, 438 (Tex.Cr.App. 2001).  It has also held that even the defense's opening statement may open the door to admission of extraneous-offense evidence to rebut a defensive theory raised in that opening statement. ***Mata v. State***, 03-12-00476-CR (Tex.App. - Austin, June 24, 2014)(not designated for publication), citing ***Bass v. State***, 270 S.W.3d 557, 563 (Tex.Cr.App. 2008).  Moreover, the concept of "opening the door" applies to both the State and the defense. See, e.g., ***Renteria v. State***, 206 S.W.3d 689, 697 (Tex.Cr.App. 2006); ***Walters v. State***, 247 S.W.3d 204, 220 (Tex.Cr.App. 2007).

Both ***Powell*** and ***Bass*** provide that an opening statement can open the door to the admission of otherwise inadmissible evidence. That is important, because, in this case, as he concluded his opening statement, counsel for the State told the jury:

> What the State anticipates the evidence is going to show is this fantastic tale from the defendant about night terrors, sleepwalking, and out-of-body experiences and wet dreams and this perfect storm of how all these complex acts of undressing yourself, undressing another person, sexual intercourse and

16

> ejaculation all occurred while the defendant was not conscious and that, therefore, he didn't intend to do any of these things. I'll submit to you at the end of this evidence that it's a load of crap. Thank you very much.

RR Vol. 3, P. 40.    Additionally, during its opening final argument, the State attacked Appellant's claim that he was asleep at the time of the incident (RR Vol. 5, P. 21, L. 4-11; P. 23, L. 12-19).  More importantly, in his closing final argument, counsel for the State emphasized the lack of "medical evidence" supporting the defensive theory:

> (Mr. McCabe): There has been no medical evidence. There has been no scientific evidence. There has been nothing for you to consider that he didn't act consciously, that he didn't do these things on purpose, that he had some sort of disorder or wasn't in his right mind. This was an intentional, knowing, voluntary act.

RR Vol. 5, P. 41, L. 9-14.

Under the rationale of both *Powell* and *Bass*, the testimony offered by the defense regarding Dr. Bornemann's opinion on Appellant's behavior was admissible to rebut the argument made by the State in its opening statement, that the claim Appellant was asleep was a "load of crap."  This is further reinforced by the statements made by counsel for the State during both opening and closing final argument, also attacking Appellant's defense.

17

The trial court erred by refusing to permit Dr. Bornemann's testimony to be heard by the jury, and the Court of Appeals erred by failing to so find.

## Conclusion - First Ground for Review

Appellant proved, by clear and convincing evidence, that Dr. Bornemann's testimony would assist the jury in determining whether Appellant acted while sleeping or not. The trial court erred by excluding his opinion testimony, and the Court of Appeals erred by affirming the trial court's actions. Discretionary review should be granted.

## Ground for Review Number Two Restated

**The Court of Appeals Erred When it Resolved Appellant's Claim of Charge Error Without Reference to or Application of _Almanza v. State_.**

## Facts Relevant to Second Ground for Review
(Gleaned from the Opinion of the Court of Appeals)

In his second point of error, below, Appellant argued the trial court erred by refusing to include the words "intentionally or knowingly" in the application paragraph of the indecency charge.

18

The charge given was as follows,[2] and Appellant requested that the terms "intentionally or knowingly" be included where asterisks inside of brackets have been inserted:

> Now bearing in mind the foregoing instructions, if you believe from the evidence beyond a reasonable doubt that the defendant, ALEJANDRO JOHN GARCIA, on or about December 24, 2010, in Williamson County, Texas, [***] engaged in sexual contact with a child younger than 17 years of age, namely, any touching by the defendant, including touching through clothing, of any part of the genitals of [KG], with intent to arouse or gratify the defendant's sexual desire, then you will find the defendant guilty of the offense of Indecency with a Child by Contact, as alleged in Count Two of the indictim, and so say by your verdict.

As he did in the trial court, Appellant asserts, that without the words "knowingly or intentionally" in the application paragraph, the jury was free to treat the case as a strict liability offense and convict Appellant even if they believe he did not act intentionally.

Citing ***Vasquez v. State***, 389 S.W.3d 361, 366 (Tex.Cr.App. 2012), the Court of Appeals held that the jury charge must contain an accurate statement of the law and must set out all of the essential elements of the offense. It also held that, in examining the charge for possible error, it was required to "view the charge as a whole instead of as a series of isolated and unrelated

---

[2] Copied verbatim from the Court of Appeals opinion. See ***Garcia***, slip op. at 6.

19

statements." *Garcia*, slip op. at 6. The Court of Appeals thereafter found the trial court did not abuse its discretion and overruled Appellant's point of error. *Garcia*, slip op. at 7.

## Summary of the Argument
## Second Ground for Review

By considering Appellant's claim under only *Vasquez*, the Court of Appeals applied the wrong standard. Had it correctly applied the long standing and still valid *Almanza* test, it would have found that the trial court erred as claim by Appellant, and that Appellant suffered "some harm."

## Argument & Authorities - Second Ground for Review

In *Vasquez*, the defendant was charged with aggravated robbery. The evidence at trial showed that he and his two roommates hatched a scheme to steal money at gunpoint from a woman driving a taqueria truck. He was the designated getaway driver.

The abstract section of the jury charge defined the law of parties, and the application paragraph stated that the jury should

find appellant guilty if he was "acting alone or as a party (as herein defined)" in committing aggravated robbery. The defense presented was that the defendant was merely present when his roommates committed the robbery.

The jury convicted him and the Court of Appeals, relying on the Court's plurality opinion in *Johnson v. State*, 739 S.W.2d 299 (Tex.Cr.App. 1987), found reversible error because the trial judge, over the defendant's objection, declined to apply the law of parties more explicitly in the application paragraph. *Vasquez*, 342 S.W.3d at 363.

The Court granted the State's petition to decide whether objected-to error in the application paragraph is subject to the "usual harm analysis" set out in *Almanza v. State*, 686 S.W.2d 157, 171 (Tex.Cr.App. 1985), "or a *per se* finding of harm." *Vasquez*, 342 S.W.3d at 363. The Court ultimately concluded that the "usual *Almanza* factors" applied.[3]

---

[3]    Although the Court found that "any error in the present application paragraph" was harmless, unrelated to the instant case, the Court overruled *Johnson* "to the extent that it suggests a *per se* finding of harm." *Vasquez*, 342 S.W.3d at 363.

21

*Vasquez* does not and cannot stand as the standard for addressing claims of jury charge error. The "usual *Almanza* factors" remain the proper way to address such claims. Thus, contrary to the Court of Appeals' statement that it "must view the charge as a whole instead of as a series of isolated and unrelated statements," the Court was, in fact, required to look not at the charge "as a whole," but at the particular part of the charge identified by Appellant as being in error. Had it done so, the Court of Appeals would have found, for the reasons set out in Appellant's brief below, that the trial court erred by its actions.

In this case, Appellant properly objected to the trial court's failure to include the terms "intentionally or knowingly" in the court's charge as requested. Thus, when it found jury charge error, as Appellant asserts it would have been required to do, the "usual *Almanza* factors" would require the Court of Appeals to determine whether Appellant suffered "some harm." *Almanza*, 686 S.W.2d at 171. "Some harm" means <u>any</u> harm, regardless of

degree. See ***Arline v. State***, 721 S.W.2d 348, 351 (Tex.Cr.App. 1986).

Taking the application paragraph which was actually given to the jury, then reading it as the common person would read it, one would believe that they were authorized to convicted Appellant if he "engaged in sexual contact with the complainant," regardless of whether they believed he did so knowingly or intentionally. Indecency with a child is <u>not</u> a strict liability offense, yet the court's charge, as given, authorized the jury to convict as if it were. Thus, Appellant did, in fact, suffer "some harm," because the application paragraph given to the jury in this case authorized them to convict Appellant <u>simply</u> because he engaged in sexual contact, even if they believed he was unaware he was doing it and had no intention to do it.

## Conclusion - Second Ground for Review

The trial court erred by refusing to include terms "intentionally or knowingly" in the court's charge as requested by Appellant's trial counsel. The Court of Appeals erred by applying

what it perceived to be the *Vasquez* standard, rather the "usual *Almanza* factors" which the Court's opinion in *Vasquez* mandates. Had it utilized the "usual *Almanza* factors," the Court below would have found that the trial court erred in its charge to the jury, and that Appellant was harmed by that error. Discretionary review should be granted, and a new trial ordered.

## Prayer

WHEREFORE, PREMISES CONSIDERED, Alejandro John Garcia, Appellant in the above styled and numbered cause respectfully prays that the Court will grant Discretionary Review of the instant case, and upon submission of the case will vacate the judgments of the courts below, and remand this case for a new trial.

Respectfully submitted,

**John G. Jasuta**
Attorney at Law
Post Office Box 783
Austin, Texas 78767-0783
lawyer1@johngjasuta.com
Tel. 512-474-4747
Fax: 512-532-6282
State Bar No. 10592300

**David A. Schulman**
Attorney at Law
Office Box 783
Austin, Texas 78767-0783
zdrdavida@davidschulman.com
Tel. 512-474-4747
Fax: 512-532-6282
State Bar No. 17833400

Attorneys for Alejandro John Garcia

## Certificate of Compliance and Delivery

This is to certify that: (1) this document, created using WordPerfect™ X7 software, contains 4,498 words, excluding those items permitted by Rule 9.4 (i)(1), Tex.R.App.Pro., and complies with Rules 9.4 (i)(2)(B) and 9.4 (i)(3), Tex.R.App.Pro.; and (2) on March 13, 2015, a true and correct copy of the above and foregoing "Petition for Discretionary Review" was transmitted via the eService function on the State's eFiling portal, to John Prezas (jprezas@wilco.org), counsel for the State of Texas, and the Hon. Lisa McMinn (lisa.mcminn@spa.state.tx.us), State's Prosecuting Attorney.

_____

**David A. Schulman**

# Exhibit "A"

Court of Appeals' Opinion of December 11, 2014

# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

## NO. 03-12-00781-CR

**Alejandro John Garcia, Appellant**

**v.**

**The State of Texas, Appellee**

### FROM THE DISTRICT COURT OF WILLIAMSON COUNTY, 368TH JUDICIAL DISTRICT
### NO. 11-216-K368, HONORABLE BURT CARNES, JUDGE PRESIDING

## M E M O R A N D U M   O P I N I O N

A jury found Alejandro John Garcia guilty of indecency with a child by contact and assessed a sentence of ten years in prison. Garcia contends that the trial court abused its discretion by excluding his expert's testimony, that the trial court abused its discretion by refusing to include the words "intentional and knowing" in the application paragraph of the jury instruction, and that the evidence is insufficient to sustain the conviction for indecency by contact. We will affirm the judgment.

## BACKGROUND

Garcia's nine-year-old daughter went for an overnight visit to the apartment Garcia shared with his girlfriend and their four-year-old son. She watched a movie with her brother in her brother's room while Garcia watched a movie in the living room with the girl's uncle, smoking marijuana. Garcia's girlfriend was at work that evening. Garcia's daughter testified that she

ordinarily slept on the couch during her visits and that, after the movies finished, Garcia fixed the couch as her bed that night. They watched some television and, at around 9:36 p.m., she fell asleep on the couch. She said that Garcia also fell asleep on the couch, which was unusual. She woke up later when Garcia touched her, unbuckled his belt, then did "something really gross." She testified, "He pulled down my pants and stuck his middle part into my bottom. And then he put his hands on my front part." She testified that he put his "middle part inside my butt." She testified that after doing those things "he woke up, and he said, 'Oh, my God.' And then he started wiping my butt and pulled up my pants. And then he went and threw the paper towel away. . . . [H]e told me to take a shower, but I didn't." She said that Garcia said, "What the F?" and "Why did I do that?" to himself. She testified that he did not tell her to keep quiet, did not threaten her, did not try to bribe her, and did not blame her. She said that she knew Garcia was asleep when these events occurred "because he wouldn't have done that if he was awake."

The girl's grandparents came and picked her up later that night and delivered her to her mother, who then immediately took the child to the hospital for a checkup. Because of the nature of the actions reported to hospital personnel, Austin Police were notified.

Austin police officer Gregory White testified that Garcia admitted that he touched his penis to his daughter's anus, but Garcia claimed he did not penetrate her. White testified that Garcia "actually said that he wasn't sleepwalking, but was just tired. He was trying to describe it. He was just tired. . . . He offered that he was drinking and smoking weed but didn't offer any other explanation as to what would explain an altered mental state." White said that Garcia reported being fatigued from having worked long hours. White also testified, "In this case he was offering the explanation that he [mistook] his daughter [] for his girlfriend []."

2

The child's mother testified that her daughter texted her upset, but would not speak to her when she picked her up later that night. The mother said that Garcia denied doing anything to their daughter. The child started shaking at the hospital and refused to allow a genital exam. The mother testified that she continues to take her daughter to counseling even though her daughter says she does not know why she has to go and the counselor thinks they have nothing further to discuss.

The Department of Public Safety forensic examiner testified that tests of the child's panties indicated the presence of semen in a stained area, though because no sperm were found the substance could have been something else. The examiner tested the stain for DNA, compared it to Garcia's DNA, concluded that Garcia could not be excluded as a contributor, and stated that the probability of choosing another unrelated contributor was one in 436.6 million for Hispanic persons.

Based on the State's objection, the trial court excluded Garcia's proposed witness, Dr. Michel Bornemann, a self-described "sleep physician." Dr. Bornemann testified during a voir dire examination and a bill of exception. He would have testified to the jury about the possibility of Garcia acting sexually while essentially asleep. He said he reviewed a police report, reviewed the hospital's report on the examination of the victim, listened to Garcia's interview with Austin police, interviewed Garcia, and talked to Garcia's girlfriend. Dr. Bornemann did not physically examine Garcia, nor did he test him for whether he was a sleepwalker. He testified that such tests can show whether someone sleepwalks during that test and whether the person has any underlying condition that could account for sleepwalking, but not whether a person might have sleepwalked on a particular previous occasion.

The jury found Garcia not guilty of aggravated sexual assault of a child, but found him guilty of indecency with a child by contact.

3

**DISCUSSION**

Garcia challenges the trial court's exclusion of Dr. Bornemann's testimony, its jury instruction, and the sufficiency of the evidence to support the conviction.

**The court did not err by excluding the proffered expert testimony**.

Garcia contends that the trial court erred by sustaining the State's objection to his expert, Dr. Bornemann. Garcia contends that the trial court wrongly excluded the testimony because it did not like the way in which Dr. Bornemann reached his conclusion.

We review trial-court rulings on the admissibility of evidence under an abuse of discretion standard. *Green v. State*, 934 S.W.2d 92, 101-02 (Tex. Crim. App. 1996). A trial court abuses its discretion when it acts without reference to any guiding principles, and we reverse the judgment when that abuse harms the defendant. *Ex parte Ramey*, 382 S.W.3d 396, 401 (Tex. Crim. App. 2012). A party proffering expert testimony must show that the scientific evidence is reliable through clear and convincing evidence showing the following: (1) the underlying scientific theory is valid, (2) the technique applying the theory is valid, and (3) the technique was properly applied on the occasion in question. *Sexton v. State*, 93 S.W.3d 96, 100 (Tex. Crim. App. 2002) (citing *Kelly v. State*, 824 S.W.2d 568, 572 (Tex. Crim. App. 1992)).

When Garcia called Dr. Bornemann, the State requested and obtained a hearing concerning the underlying facts or data on which his opinion was based. *See* Tex. R. Evid. 705(b). Through Dr. Bornemann, Garcia sought to offer evidence that he was essentially sleepwalking when he touched his daughter and, therefore, that he lacked the requisite intent or voluntariness to commit the crime. At the close of the voir dire examination, the State objected to the testimony, arguing

4

that it was based on a novel and unreliable scientific theory that could mislead the jurors. The State contended that the theory lacked diagnostic criteria and support in the medical community and, furthermore, that Dr. Bornemann did not "appropriately diagnose this defendant as having any disorder."

We will focus on the third of the factors set out in *Sexton*. Dr. Bornemann stated that he did not examine Garcia physically, although they conversed by telephone, and he did not rely on any examination of Garcia regarding sleep disorders. Dr. Bornemann testified as follows:

> Clinically, in order to make a clinical diagnosis, you need longitudinal assessment of the individual to confirm that it is a recurrent problem that is of significant health or safety consequences to the individual and/or individuals that were with him. I can only guess what the situation would be with Mr. Garcia. But without having a longitudinal assessment as a physician and continuity of care, I can't with confidence state that he has a specific disorder.

Thus, despite his conclusions regarding Garcia's actions, Dr. Bornemann essentially testified that diagnostic techniques are required to find a disorder and that he did not apply those techniques to Garcia. We cannot say that the trial court abused its discretion by excluding Dr. Bornemann's testimony because Garcia failed to show by clear and convincing evidence that a valid technique for diagnosing parasomnia was properly applied to him. *See Sexton*, 93 S.W.3d at 100.

**The jury instruction on indecency was not erroneous.**

Garcia contends that the trial court erred by refusing to include the words "intentionally or knowingly" in the application paragraph of the indecency charge. The charge given was as follows, and Garcia requested that the terms "intentionally or knowingly" be included where we have inserted asterisks inside of brackets:

Now bearing in mind the foregoing instructions, if you believe from the evidence beyond a reasonable doubt that the defendant, ALEJANDRO JOHN GARCIA, on or about December 24, 2010, in Williamson County, Texas, [***] engaged in sexual contact with a child younger than 17 years of age, namely, any touching by the defendant, including touching through clothing, of any part of the genitals of [KG], with intent to arouse or gratify the defendant's sexual desire, then you will find the defendant guilty of the offense of Indecency with a Child by Contact, as alleged in Count Two of the indictment, and so say by your verdict.

Garcia contends that, without the requested words, the charge improperly instructed the jury to convict him because he engaged in prohibited contact, even if he was unaware he was doing it and had no intention of doing it.

The jury charge must contain an accurate statement of the law and must set out all of the essential elements of the offense. *Vasquez v. State*, 389 S.W.3d 361, 366 (Tex. Crim. App. 2012). In examining the charge for possible error, we must view the charge as a whole instead of as a series of isolated and unrelated statements. *Id.*

The applicable statute prohibits persons from engaging in sexual contact with a child. *See* Tex. Penal Code § 21.11(a). Sexual contact occurs when a person acting with the intent to arouse or gratify the sexual desire of any person either touches certain parts of a child's body or touches any part of a child's body with certain parts of the toucher's body. *Id.* § 21.11(c). The statute does not include "knowing" as a culpable mental state for this offense, *see id.*, so the court's exclusion of that word was proper. Contrary to Garcia's argument, the charge given did not create a "strict liability" offense based merely on contact because it instructs that, to be guilty of the offense, the defendant must have committed the requisite touching intending to arouse or gratify someone's sexual desire. Courts have held that *including* the words "intentionally or knowingly" as Garcia requested in an indecency charge would be error. *See Bazanes v. State*, 310 S.W.3d

6

32, 36-37 (Tex. App.—Fort Worth 2010, pet. ref'd); *Jones v. State*, 229 S.W.3d 489, 492 (Tex. App.—Texarkana 2007, no pet.). The trial court did not abuse its discretion by excluding the terms "intentionally or knowingly" where Garcia requested they be included because his requested instruction would not have accurately described the offense as defined by the language of the statute.

**The evidence was sufficient to support the finding of guilt.**

Garcia contends that the record lacks evidence to support the finding that he had the requisite intent when having sexual contact with his daughter. He contends that there is no evidence that he acted intentionally or knowingly. A conviction on the offense of indecency with a child requires a finding that the offender had sexual contact with the child intending to gratify the sexual desire of any person. *See* Tex. Penal Code § 21.11. While the offense of indecency by contact requires a finding that the offensive contact was committed with the specific intent to arouse or gratify someone's sexual desire and a more basic finding that the contact was committed voluntarily, *see id.* § 6.01(a), the offense does not require any other finding of knowledge or intent.

When reviewing the sufficiency of the evidence to support a verdict, an appellate court must view the evidence in the light most favorable to the verdict and determine whether any rational trier of fact could have found each essential element of the offense beyond a reasonable doubt. *Jackson v. Virginia*, 443 U.S. 307, 320 (1979); *Brooks v. State*, 323 S.W.3d 893, 896 (Tex. Crim. App. 2010). The reviewing court must defer to the jury's determination of weight and credibility; the jury is the sole judge of the witnesses' credibility and the weight to be given their testimony. *Brooks*, 323 S.W.3d at 899. The fact finder is entitled to judge the credibility of the witnesses and can believe all, some, or none of the testimony presented. *Chambers v. State*,

7

805 S.W.2d 459, 461 (Tex. Crim. App. 1991). When the record contains evidence supporting conflicting inferences, the appellate court must presume that the jury resolved any conflicts in favor of its verdict. *Rabb v. State*, 434 S.W.3d 613, 622 (Tex. Crim. App. 2014). Intent may be inferred from acts, words, and conduct of the accused. *Hernandez v. State*, 819 S.W.2d 806, 810 (Tex. Crim. App. 1991).

Garcia does not dispute that he made the requisite contact with his daughter or that she was a child within the statutory definition, but contends that he did not act with the requisite intent or voluntariness. *See* Tex. Penal Code §§ 6.01(a) (voluntariness), 21.11(c) (sexual contact). He points to his daughter's testimony that he was asleep when he touched his daughter and that he "woke up, and he said, 'Oh, my God.'" He contrasts his behavior with that of other persons convicted of sexual crimes. He cites a case in which the Texarkana court of appeals reversed a conviction for aggravated sexual assault of a child based on the State's failure to prove that an accused acted voluntarily when touching his daughter because the State provided no evidence that the defendant was awake or that a sleeping person could not engage in the offensive conduct. *Whatley v. State*, 415 S.W.3d 530, 548 (Tex. App.—Texarkana 2013), *reversed*, No. PD-1627-13, 2014 Tex. Crim. App. LEXIS 1511 (Tex. Crim. App. Oct. 8, 2014).

Since Garcia filed his supplemental brief based on the Texarkana court's opinion, however, the court of criminal appeals has reversed that decision, reinstating the jury's verdict of guilt. 2014 Tex. Crim. App. LEXIS 1511. Although the child in that case told investigators when she was eleven years old that Whatley was asleep during the event because his eyes were closed and he was snoring, she acknowledged during her testimony when she was eighteen that she had been unable to see Whatley's face when they were in bed because he was behind her. *Id.* at *14.

8

The court of criminal appeals found evidence from which the jury could have inferred that the child had mistaken Whatley's closed eyes and heavy breathing for sleep. *Id*. at *15. That court wrote that the jury could have concluded that the child reported that Whatley was asleep to reconcile her love for him with the abuse by asserting that he must have been unaware of his actions. *Id.* at *14. Although the child had theorized that Whatley might have sleepily mistaken her for her mother, her mother testified that, in the five years she had shared a bed with Whatley, he only once reached for her in his sleep, and on that occasion he did not touch or penetrate her vagina.[1] *Id.* at *14-15.

As Garcia argued, the testimony in this case is somewhat similar to that in *Whatley*—a record that the court of criminal appeals has concluded supports the jury's verdict and the implicit finding that Whatley's actions were voluntary. *See id.* at *16-17. There is some evidence on which the jury could have relied to find that Garcia's actions were voluntary and committed with the requisite intent. The presumptive presence of semen on the child's clothing is clear evidence that Garcia's sexual desires were aroused and gratified by the contact. Although Garcia's daughter testified that her father was asleep during this event, the jury was entitled to disregard this aspect of her testimony and apparently did so. The jurors were entitled to and must have chosen instead to credit Garcia's statement to police that he was not sleepwalking when it occurred. They may have credited his statement that he believed he was touching his girlfriend as

---

[1] This testimony conflicted with the mother's report to police investigators that Whatley had several times initiated sexual contact while asleep and claimed not to remember doing so. *See Whatley v. State*, 415 S.W.3d 530, 546 (Tex. App.—Texarkana 2013), *reversed*, No. PD-1627-13, 2014 Tex. Crim. App. LEXIS 1511 (Tex. Crim. App. Oct. 8, 2014). Although the court of criminal appeals did not reference this conflicting evidence in its opinion, it could have concluded that the jury was entitled to resolve the conflict in favor of the mother's trial testimony.

showing that he was awake enough to recognize that he was contacting someone in a sexual manner—demonstrating that his actions were voluntary—but disbelieved his assertion that he thought he was touching his girlfriend.  The standard of review does not permit us to reverse the conviction on this record.

## CONCLUSION

Finding no reversible error presented, we affirm the conviction.

_____

Jeff Rose, Justice

Before Justices Puryear, Rose, and Goodwin

Affirmed

Filed:   December 11, 2014

Do Not Publish

10