# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

---
## NO. 03-07-00440-CV
---

**Fred Rogers, Appellant**

**v.**

**Texas State Board of Public Accountancy, Appellee**

---
### FROM THE DISTRICT COURT OF TRAVIS COUNTY, 200TH JUDICIAL DISTRICT
### NO. D-1-GN-05-000286, HONORABLE DARLENE BYRNE, JUDGE PRESIDING
---

## O P I N I O N

Fred Rogers appeals the district court's judgment affirming the order of the Texas State Board of Public Accountancy revoking his certificate to practice accounting. Because we conclude that the Board's order was supported by substantial evidence and was neither arbitrary nor capricious but that the district court erred in affirming the Board's award of attorney's fees, we affirm the district court's judgment in part and reverse in part.

## BACKGROUND

In order to practice public accountancy in Texas, the law requires a person to hold both a certificate and a license. Tex. Occ. Code Ann. §§ 901.251 (certificate required), .401 (license required) (West 2004). Rogers has at various times held both a certificate and a license.

In 1999, the Board disciplined Rogers for violations of the Public Accountancy Act[1] and, in an order issued September 16, 1999, the Board suspended Rogers's accounting certificate for two years. The Board's 1999 order also imposed administrative costs of $17,429.20. Rogers appealed the Board's 1999 order and sought a stay against the Board's enforcement of the penalty as permitted under section 901.556 of the occupations code. The district court authorized a supersedeas bond in the amount of $17,429.20 on January 10, 2000.[2] The district court and this Court affirmed the Board's 1999 order on appeal, and the supreme court denied Rogers's petition for review. *See Rogers v. Texas State Bd. of Pub. Accountancy*, No. 03-00-00738-CV, 2001 Tex. App. LEXIS 7310, at*2 (Tex. App.—Austin 2001, pet. denied) (mem. op., not designated for publication). This Court then issued mandate on March 26, 2002.

In a letter to the Board dated April 24, 2002, Rogers inquired about the period of his certificate suspension. The Board responded in a letter dated May 1, 2002, that Rogers's certificate had been suspended for two years, including the time periods from September 16, 1999 (the date of the Board's order) through January 10, 2000 (the date the district court authorized Rogers to post a supersedeas bond), and from March 26, 2002 (the date this Court issued mandate) through December 1, 2003. In its letter the Board notified Rogers as follows:

> Our records show that the Order was entered September 16, 1999. Your certificate was suspended for a period of two years. On January 10, 2000 you requested and

---

[1] The Public Accountancy Act is codified in chapter 901 of the occupations code. Tex. Occ. Code Ann. §§ 901.001-.606 (West 2004 & Supp. 2007).

[2] There is no dispute and the record shows that, on February 4, 2000, Rogers made a cash payment to the Board for placement in an escrow account in lieu of filing a supersedeas bond. *See* Tex. Occ. Code Ann. § 901.556(b)(1) (West 2004) (allowing for payment in lieu of bond).

received a Stay of the Order from the Travis County District Court. This Stay entitled you to exercise all of the rights of a certificate holder. At the conclusion of your appeals on March 26, 2002, the Stay was dissolved and the Board's Order took effect. Therefore, in accordance with the Board's Order, your certificate is suspended until December 1, 2003. The Board gives you credit for the approximately four month period between issuance of the Order (September 16, 1999) and the issuance of the Stay (January 10, 2000).

To comply with the Board's Order you should refrain from performing any service within the definition of the practice of public accountancy in Section 901.003 of the Public Accountancy Act. . . . The Board will periodically ask you to report on your professional activities. While we understand this Order imposes a hardship on you, the Order was reviewed at your request by three different appellate courts and it was upheld in all respects.

On January 9, 2004, the Board again initiated enforcement proceedings against Rogers for violations of the Act and the Board's rules. The Board referred the matter to the State Office of Administrative Hearings for a contested case hearing, which was held on August 9, 2004. Although Rogers attended the hearing, he did not offer evidence or otherwise participate in the hearing.[3] After the conclusion of the hearing, the ALJ issued a proposal for decision recommending that the Board revoke Rogers's certificate to practice public accountancy, impose an $8,000 administrative penalty, and assess $225 in administrative costs. The ALJ expressly rejected the Board's request for attorney's fees on the ground that the Board did not have statutory authority to award attorney's fees.

The Board adopted the PFD in part and reversed in part. In its final order, the Board affirmed the ALJ's recommendations to revoke Rogers's certificate to practice public accountancy

---

[3] Rogers was represented by counsel, but his counsel did not attend the hearing due to a trial conflict. Rogers's counsel had filed a motion for continuance, but the ALJ denied the motion. Rogers obtained new counsel to represent him in this appeal.

3

and to impose an $8,000 administrative penalty against Rogers. The Board reversed the award of $225 in administrative costs in favor of an award of $33,205, which included the original $225 in SOAH costs plus an additional $32,980 in attorney's fees "as reasonable costs for staff attorney time expended in the handling of this case."

Rogers appealed the Board's final order to the district court, and the district court affirmed the Board's order in its entirety. This appeal followed.

**DISCUSSION**

On appeal, Rogers asserts four issues: (1) the Board lacks statutory authority to award attorney's fees; (2) the Board erred in its findings that Rogers violated the Act because Rogers held a certificate and a license at all relevant time periods; (3) the Board's order is not supported by substantial evidence; and (4) the revocation of Rogers's certificate to practice public accountancy is arbitrary and capricious. The Board responds that Rogers has waived his claims by failing to properly include them in his motion for rehearing filed with the Board and failing to properly include them in his motion for new trial filed in the district court.[4] In the alternative, if the Court finds that

---

[4] Having reviewed Rogers's motion for rehearing filed with the Board, we conclude that Rogers sufficiently preserved his claims by including them in his motion for rehearing. *See United Sav. Ass'n v. Vandygriff*, 594 S.W.2d 163, 169-170 (Tex. App.—Austin 1980, writ ref'd n.r.e.) ("A motion for rehearing . . . is sufficient if it gives the agency sufficient notice of alleged error so as to allow the agency to correct the error or to prepare to defend it.").

Likewise, we disagree with the Board's contention that Rogers failed to preserve error by failing to include his claims in his motion for new trial. In support of this argument, the Board cites Texas Rule of Civil Procedure 324(b), but the plain language of that rule makes it inapplicable in the context of judicial review of the Board's order under the substantial evidence rule. *See* Tex. R. App. P. 324(b). Rule 324(b) provides that a point in a motion for new trial is required to preserve five categories of complaints on appeal: a complaint on which evidence must be heard, e.g., jury

Rogers has preserved error, the Board argues that the Act and the Self-Directed Semi-Independent Agency Project Act ("SDSI Act")[5] authorized the award of attorney's fees as "direct administrative costs," that the Board properly concluded that Rogers practiced public accountancy at a time when his certificate was suspended as a result of the Board's 1999 order, and that the Board's order, including its decision to revoke Rogers's certificate, was supported by substantial evidence and was not arbitrary or capricious.

### Standard of Review

We review the Board's order under the substantial evidence rule.[6] Tex. Gov't Code Ann. § 2001.174 (West 2000). Under the substantial evidence rule, we presume that the agency's order is valid and that its findings, inferences, conclusions, and decisions are supported by substantial evidence. *City of El Paso v. Public Util. Comm'n*, 883 S.W.2d 179, 185 (Tex. 1994); *Texas Health Facilities Comm'n v. Charter Med.-Dallas, Inc.*, 665 S.W.2d 446, 452 (Tex. 1984).

---

misconduct, a complaint of factual insufficiency to support a jury finding, a complaint that the jury finding is against the overwhelming weight of the evidence, a complaint as to damages, or a complaint of incurable jury argument. Because we review the Board's order under the substantial evidence rule, none of the five types of complaints listed in rule 324(b) occurs in the context of judicial review of the Board's order. A substantial evidence review is limited to the record of evidence taken before the agency; there is no jury—hence, no jury findings and no possibility of incurable jury argument; and there are no damages. The supreme court has held that the intent of rule 324 was to eliminate motions for new trial. *See Howell v. Coca-Cola Bottling Co.*, 599 S.W.2d 801 (Tex. 1980). The plain language of the rule does so with few exceptions. Tex. R. Civ. P. 324. Because none of the exceptions in rule 324(b) occur in the context of our substantial evidence review of the Board's order, we conclude that Rogers was not required to file a motion for new trial in order to preserve error. *See id.*

[5] Tex. Rev. Civ. Stat. Ann. art. 8930 (West Supp. 2007).

[6] Because the Act does not define the scope of judicial review, we review the Board's decision under the substantial evidence rule. *See* Tex. Gov't Code Ann. § 2001.174 (West 2000).

5

The complaining party has the burden to overcome this presumption. *City of El Paso*, 883 S.W.2d at 185; *Hammack v. Public Util. Comm'n*, 131 S.W.3d 713, 725 (Tex. App.—Austin 2004, pet. denied).

When conducting a substantial evidence review, the issue for the reviewing court is not whether we believe the agency's decision was correct, but whether the record demonstrates some reasonable basis for the agency's action. *Charter Med.*, 665 S.W.2d at 452; *Central Power & Light Co. v. Public Util. Comm'n*, 36 S.W.3d 547, 561 (Tex. App.—Austin 2000, pet. denied). We evaluate the entire record to determine whether the evidence as a whole is such that reasonable minds could have reached the conclusion the agency must have reached in order to take the disputed action. *Texas State Bd. of Dental Exam'rs v. Sizemore*, 759 S.W.2d 114, 116 (Tex. 1988); *Suburban Util. Corp. v. Public Util. Comm'n*, 652 S.W.2d 358, 364 (Tex. 1983). We may not substitute our judgment for that of the agency on the weight of the evidence on questions committed to the agency's discretion. Tex. Gov't Code Ann. § 2001.174; *Charter Med.*, 665 S.W.2d at 452; *H.G. Sledge, Inc. v. Prospective Inv. & Trading Co., Ltd.*, 36 S.W.3d 597, 602 (Tex. App.—Austin 2000, pet. denied). We will sustain the agency's order if the evidence is such that reasonable minds could have reached the conclusion that the agency must have reached in order to justify its action. *Charter Med.*, 665 S.W.2d at 453; *Suburban Util. Corp.*, 652 S.W.2d at 364.

Questions involving the Board's statutory authority involve matters of statutory construction, which we review *de novo*. *See, e.g.*, *City of San Antonio v. City of Boerne*, 111 S.W.3d 22, 25 (Tex. 2003) (appellate courts review matters of statutory construction *de novo*); *In re Humphreys*, 880 S.W.2d 402, 404 (Tex. 1994) (questions of law are always subject to *de novo*

6

review). When construing a statute, our primary goal is to determine and give effect to the legislature's intent. *City of San Antonio*, 111 S.W.3d at 25. To determine legislative intent, we look to the statute as a whole, as opposed to isolated provisions. *State v. Gonzalez*, 82 S.W.3d 322, 327 (Tex. 2002). We begin with the plain language of the statute at issue and apply its common meaning. *City of San Antonio*, 111 S.W.3d at 25. Where the statutory text is unambiguous, we adopt a construction supported by the statute's plain language, unless that construction would lead to an absurd result. *Fleming Foods of Tex., Inc. v. Rylander*, 6 S.W.3d 278, 284 (Tex. 1999). We give serious consideration to an agency's interpretation of the statutes it is charged with enforcing, so long as that interpretation is reasonable and consistent with the statutory language. *Tarrant Appraisal Dist. v. Moore*, 845 S.W.2d 820, 823 (Tex. 1993). Courts, however, "do not defer to administrative interpretation in regard to questions which do not lie within administrative expertise, or deal with a nontechnical question of law." *Rylander v. Fisher Controls Int'l, Inc.*, 45 S.W.3d 291, 302 (Tex. App.—Austin 2001, no pet.).

### *Attorney's Fees*

In his first issue, Rogers complains that the Board exceeded its statutory authority under the Act when it awarded itself attorney's fees of $32,980 as administrative costs. Because we agree with Rogers that nothing in the Act expressly authorizes an award of attorney's fees, we reverse that portion of the district court's judgment affirming the Board's award of attorney's fees.

The availability of attorney's fees under a particular statute is a question of law for the court. *Holland v. Wal-Mart Stores, Inc.*, 1 S.W.3d 91, 94 (Tex. 1999). The Texas Supreme Court has consistently held that one cannot recover attorney's fees unless permitted by statute or contract

7

between the parties. *Id.* at 95 (citing cases). "'[A]n award of attorney's fees may not be supplied by implication but must be provided for by the *express* terms of the statute in question.'" *Id.* (quoting *First City Bank-Farmers Branch v. Guex*, 677 S.W.2d 25, 30 (Tex. 1984)) (emphasis added); *Travelers Indem. Co. v. Mayfield*, 923 S.W.2d 590, 593 (Tex. 1996). Thus, the supreme court has refused to authorize attorney's fees when the legislature has not done so. *Holland*, 1 S.W.3d at 95.

In support of its argument that the Board has authority to award attorney's fees, the Board points to section 901.501(a)(9) of the Act, which allows the Board to award "direct administrative costs," and to the definition of "direct administrative costs" in former section 519.27 of the Board's rules—currently at 22 Tex. Admin. Code § 519.2 (2007). Section 901.501 provides the disciplinary powers of the Board and, in relevant part, authorizes the Board to "revoke a certificate, firm license, or practice privilege," "suspend under any terms a certificate, firm license, practice privilege, or license," and "impose on a license holder the direct administrative costs incurred by the Board" in taking such action. Tex. Occ. Code Ann. § 901.501(a)(1)-(2), (9) (West 2004). By its express terms, however, section 901.501 only authorizes the Board to award "direct administrative costs." *Id.* § 901.501(a)(9). Nowhere in the Act does the legislature expressly authorize the Board to award attorney's fees. Based on the supreme court's holdings in *Holland* and *Mayfield*, we conclude that the authority to award "direct administrative costs" in section 901.501(a)(9) does not authorize the Board to award attorney's fees.

Notwithstanding the lack of an express authorization to award attorney's fees in the Act, the Board asserts that it has promulgated a rule interpreting and defining the term "direct

administrative costs" to include attorney's fees and that the legislature has accepted this interpretation. The Board's legislative acceptance argument fails for several reasons, the simplest being that the plain language of the Act does not authorize the Board to award attorney's fees. *See Holland*, 1 S.W.3d at 95; *Mayfield*, 923 S.W.2d at 593.

The doctrine of legislative acceptance is a statutory construction aid that courts may use when the text of a statute is ambiguous.[7] But the language of section 901.501(a)(9) is clear—it only permits an award of direct administrative costs, not attorney's fees. The supreme court has long held that the term "costs" does not include attorney's fees. *See Johnson v. Universal Life & Accident Ins. Co.*, 94 S.W.2d 1145, 1146 (Tex. 1936). When the legislature wants to authorize an award of attorney's fees, it knows how to do so in clear and express language. *See* Tex. Occ. Code Ann. § 1201.605(a)(1)-(2) (West Supp. 2007) (authorizing the agency director to award "reasonable attorney's fees" and "administrative costs"); Tex. Labor Code Ann. § 21.259 (West 2006) (authorizing a court to award "a reasonable attorney's fee as part of the costs"). Until it speaks with a clear voice to expressly provide for attorney's fees, we conclude the legislature has not authorized an award of attorney's fees in the language of the Public Accountancy Act.

To the extent the Board relies on its rule interpreting and defining the term "direct administrative costs," the Board's reliance is misplaced. At the time of Rogers's alleged violations, the Board's rule defined "administrative costs" to include attorney's fees. *See* 29 Tex. Reg. 3331

---

[7] *See Texas Dep't of Protective & Regulatory Servs. v. Mega Child Care, Inc.*, 145 S.W.3d 170, 176 (Tex. 2004) (explaining application of legislative acceptance doctrine in the context of an ambiguous statute); *Sharp v. House of Lloyd, Inc.*, 815 S.W.2d 245, 248 (Tex. 1991) (applying doctrine of legislative acceptance to a "statute of doubtful meaning").

9

(proposed Apr. 2, 2004), *adopted* 29 Tex. Reg. 5628 (2004) (former rule 519.2(2)). We observe, however, that the Board has since amended its rule. *See* 31 Tex. Reg. 639 (proposed Feb. 3, 2006), *adopted* 31 Tex. Reg. 4645 (2006) (codified at 22 Tex. Admin. Code § 519.2(8)). The amended version of the Board's rule adds the word "direct" to "administrative costs" and substitutes "staff salary, payroll taxes and benefits and other non-salary related expenses" for "attorney's fees and expenses, legal assistant fees and expenses." *See id.* (codified as amended at 22 Tex. Admin. Code § 519.2(8) (2007)). These recent changes to the Board's definition of "direct administrative costs" further undercut the Board's legislative acceptance argument.

Nevertheless, the Board also points to the SDSI Act and its status as a "self-directed, semi-independent agency" in support of its argument that the legislature has accepted the Board's interpretation that section 901.501(a)(9) permits an award of attorney's fees. The plain language and legislative history of the SDSI Act do not support the Board's argument. The SDSI Act was enacted by the legislature in 1999 as a pilot project. *See* Tex. Rev. Civ. Stat. art. 8930, §§ 1-2 (West Supp. 2007). Like the Public Accountancy Act, nothing in the SDSI Act expressly authorizes the Board to award attorney's fees. The SDSI Act allows the Board to set an annual budget and specifies that no costs shall be incurred by the general revenue fund. *Id.* § 6(a). The SDSI Act further specifies that the Board shall be responsible for all costs, both direct and indirect. *Id.* Section 13 of the SDSI Act provides that the office of the attorney general shall represent the Board in any litigation and that the attorney general's office may assess and collect from the Board reasonable attorney's fees associated with that litigation, but section 13 otherwise says nothing about the Board's authority to assess and collect reasonable attorney's fees. *Id.* § 13. In addition, section 14 of the SDSI Act

10

allows the Board to set the amount of fees as necessary for the purpose of carrying out the Board's functions, but that provision is subject to the limitations in the Board's enabling act—*i.e.*, the Public Accountancy Act, which does not provide authority to award attorney's fees. *Id.* § 14.

Similarly, the legislative history of the SDSI Act does not support the argument that the Board may award attorney's fees. Section 1 of the historical and statutory notes of enactment provides:

> Legislative Intent. (a) Several agencies of the State of Texas regulate specific professions in the public interest. While these licensing agencies perform important public functions, the populations most directly affected by their activities, the members of the professions, are small in comparison to the population of the state. While the agencies may collect and remit the $200 professional fee to the state, their operations are supported by examination, licensing, and other fees paid by the professionals they regulate.
>
> * * *
>
> (c) In addition, the agencies do not have unfettered discretion to raise funds from the public. The legislature has set specific limits on the amounts that may be charged the regulated profession for the services provided by the agencies.

*Id.* historical note [Act of May 30, 1999, 76th Leg., R.S., ch. 1552, 1999 Tex Gen. Laws 5338, 5338-39]. Accordingly, we reject the Board's argument of legislative acceptance, we sustain Rogers's first issue on appeal, and we reverse the district court's judgment to the extent it affirms the Board's award of attorney's fees as direct administrative costs.

*Substantial Evidence and the Board's Order*

In issues two through four, Rogers challenges the Board's order and its findings therein. For the following reasons, we conclude that the Board's order was supported by substantial evidence and was neither arbitrary nor capricious.

In his second issue, Rogers contends that the Board erred in its findings that he violated the Act because he held a license and certificate during all relevant time periods. Essentially, Rogers complains that the Board miscalculated the period of time that his certificate was suspended as a result of the Board's 1999 order. Rogers maintains that, pursuant to section 901.556, only the Board's enforcement of its administrative penalty of $17,429.20, not the suspension of his certificate, was stayed during the pendency of Rogers's appeals from the 1999 order.[8] *See* Tex. Occ. Code Ann. § 901.556 (West 2004). Thus, according to Rogers, his certificate

---

[8] Section 901.556 provides:

(a)     Not later than the 30th day after the date the board's order becomes final as provided by Section 2001.144, Government Code, the person shall:

(1)     pay the administrative penalty; or

(2)     file a petition for judicial review contesting the fact of the violation, the amount of the penalty, or both.

(b)     Within the 30-day period, a person who acts under Subsection (a)(2) may stay enforcement of the penalty by:

(1)     paying the penalty to the board for placement in an escrow account;

(2)     giving to the board a supersedeas bond in a form approved by the board that:

(A)     is for the amount of the penalty; and

12

was suspended for two years from September 16, 1999, until September 15, 2001. The Board

counters that Roger's payment of the penalty into escrow in lieu of filing a bond stayed the

enforcement of both the administrative penalty and the period of suspension from January 10,

2000—the date the court approved the supersedeas bond—until March 26, 2002—the date this Court

issued mandate. Thus, according to the Board, Rogers's certificate was suspended from September

16, 1999, until January 10, 2000, when the Board's order was stayed as a result of the trial court's

order approving a supersedeas bond, and then again from March 26, 2002, when the stay was lifted,

until December 1, 2003.[9]

     Regardless of whether we accept the suspension period urged by Rogers or the Board,

we conclude there is substantial evidence in the record to support the Board's conclusion that Rogers

held himself out as an accountant while his certificate was suspended in violation of the Act. The

---

        (B)    is effective until judicial review of the board's
                order is final; or

   (3)    filing with the board an affidavit of the person stating that the
          person is financially unable to pay the penalty and is
          financially unable to give the supersedeas bond.

  (c)    A person who fails to take action as provided by this section waives the right
       to judicial review of the board's order.

Tex. Occ. Code Ann. § 901.556 (West 2004).

   [9] There is some confusion in the record as to the Board's calculation of Rogers's suspension period. The Board's letter of May 1, 2002, states that the Board gave Rogers credit for the four-month period from September 16, 1999, until the stay was issued on January 10, 2000. In the PFD, however, the ALJ concludes that the initial period of Rogers's suspension ran from September 16, 1999, until February 4, 2000, the date Rogers submitted his payment to the Board to be placed in escrow. The Board adopted the ALJ's conclusion of law on this point. We observe, however, that this conflict does not affect our resolution of Rogers's claims.

record demonstrates that from January 1999 through July 2002, Rogers performed accounting services for Cen-Tex Family Services, Inc. There is also evidence in the record that Rogers held himself out as a certified public accountant and used the abbreviation "CPA" in his correspondence to Cen-Tex on May 25, 2000, August 1, 2000, January 30, 2002, and July 3, 2002. The record also includes a request for extension of time filed by Rogers with the Internal Revenue Service on June 14, 2001, in which Rogers listed his title as "CPA-POA." In addition, the record includes a letter dated March 8, 2002, from Rogers to the Board in which Rogers states that he has discontinued the firm "Fred Rogers, CPA." In another letter dated March 8, 2002, from Rogers to the Board, Rogers states that he has withdrawn, as a partner in the accounting firm of Kolheim, Rogers & Taylor, effective February 28, 2002. The record reflects that prior to his withdrawal on February 28, 2002, Rogers had been a partner in that firm since January 29, 1980.

In support of his argument that the Board's order is not supported by substantial evidence, Rogers points to finding of fact 16 in which the Board found that Rogers had represented himself as a certified public accountant in a letter to Cen-Tex dated July 30, 2003. Counsel for the Board conceded during oral argument that there was no letter from Rogers to Cen-Tex dated July 30, 2003, and that the date in the Board's finding was the result of a typographical error.[10] Even if we eliminate this finding as erroneous, there is evidence in the record to support the Board's remaining findings and conclusions that Rogers practiced public accountancy in violation of the Board's 1999 suspension order regardless of whether we accept Rogers's period of suspension or

---

[10] It is not clear, but the Board likely meant to reference the letter from Rogers to Cen-Tex dated July 3, 2002.

that urged by the Board. There is also substantial evidence in the record to support the Board's findings and conclusions that Rogers committed other violations of the Act and the Board's rules.

We conclude that the Board did not err in its findings and conclusions that Rogers had violated the Act as well as the Board's rules and that the Board's order was supported by substantial evidence. We overrule Rogers's second and third issues.

In his fourth issue, Rogers complains that the Board's decision to revoke his accounting certificate was arbitrary and capricious in light of the Board's continued renewal of his accounting license in 1999, 2000, and 2001. We disagree.

The legislature has expressly authorized the Board to revoke Rogers's certificate after notice and hearing if the Board determines that grounds for discipline exist. Tex. Occ. Code Ann. § 901.501(a)(1). The Board's determination of the appropriate penalty is a matter left to the Board's discretion. *Id.* We may not substitute our judgment for that of the Board on the weight of the evidence on questions committed to the Board's discretion. Tex. Gov't Code Ann. § 2001.174. The record does not support Rogers's claim that he misunderstood the effect of the Board's 1999 order suspending his certificate to practice public accountancy.[11] The record demonstrates that Rogers has been previously disciplined by the Board for violations of the Act and the Board's rules

---

[11] In his letter to the Board dated April 24, 2002, Rogers stated, "I am requesting an appointment to discuss the other term or condition of the Board's order. I have satisfied one portion of the Board's order and maybe two. I would like a fair chance to discuss the other portion with you and calculate a fair date of my license suspension. I did not start any audit engagements before or during the appeal period on the advice of my previous attorney . . . I am not a member of any practice unit. I am still not performing any audits, compilations or reviews." These statements demonstrate that Rogers understood the Board's 1999 order suspending his certificate to practice public accountancy meant that he could not practice during the period his certificate was suspended regardless of whether the Board renewed his license.

and that Rogers had again committed violations of the Act and the Board's rules. In addition to these violations, the Board found, and the record supports, that Rogers committed "discreditable acts" as defined in the Board's rules and is not fit to hold a certificate to practice public accountancy under section 901.502(11) of the Act. Based on this record, we conclude that reasonable minds could have reached the conclusion reached by the Board and that the Board acted within its authority to revoke Rogers's certificate. We cannot say that the Board's decision was arbitrary or capricious. We overrule Rogers's fourth issue.

## CONCLUSION

Having concluded that the Board lacked statutory authority to award attorney's fees, we reverse that portion of the district court's judgment affirming the Board's award of attorney's fees. Because we conclude that the remainder of the Board's order was supported by substantial evidence and was neither arbitrary nor capricious, we affirm the district court's judgment affirming the Board's order in all other respects, and we remand this cause to the Board for further proceedings consistent with our opinion.

_____

Jan P. Patterson, Justice

Before Justices Patterson, Puryear and Henson

Affirmed in part; Reversed and Remanded in part

Filed: April 24, 2008

16