# NO. 12-23-00088-CV

# IN THE COURT OF APPEALS

# TWELFTH COURT OF APPEALS DISTRICT

# TYLER, TEXAS

| | | |
|---|---|---|
| *IN RE:* | § | |
| *EXPRESS DELIVERY ENTERPRISE LLC,* | § | *ORIGINAL PROCEEDING* |
| *RELATOR* | § | |

## *MEMORANDUM OPINION*

Express Delivery Enterprise, LLC (Express) filed this original proceeding in which it challenges Respondent's refusal to dismiss the claims against Express when the parties entered a contractual agreement to litigate any dispute under the contract in an Idaho court.[1] We conditionally grant the writ.

## BACKGROUND

Express is a shipping broker. In September 2022, Real Party in Interest Rogers & Doty Enterprises, LLC d/b/a Redline Transport (Redline), a trucking company, sued Express under the Texas Uniform Declaratory Judgment Act. According to Redline's petition, Redline hired Kristin's Dispatch Services (KDS) to "find and secure freight" for Redline and dispatch its truckers (dispatch agreement).[2] Redline's agreement with KDS authorized KDS to perform certain services for Redline. KDS's owner, Kristin Alexander, signed a transportation agreement with Express on August 6, 2020, purportedly on behalf of Redline, but the agreement identifies Roll Out Logistics, Inc. as the carrier. Redline alleged that Alexander signed the agreement on

---

[1] Respondent is the Honorable Vincent Dulweber, Judge of the County Court at Law No. 2 in Gregg County, Texas.

[2] Redline also sued KDS. KDS is not a party to this original proceeding.

behalf of Roll Out, but later took the position that she signed that agreement on behalf of Redline as its agent. Redline alleges that Alexander never showed the transportation agreement to anyone at Redline, obtained approval from Redline before she entered the agreement, nor did she provide Redline with a copy of the agreement. Redline further alleges that it subsequently received a letter from Express demanding that Redline pay twenty percent of the value of each load Redline carried for a company known as Diamond C based on a non-solicitation clause in the transportation agreement. Redline sought a declaratory judgment that it is not a party to the transportation agreement and alternatively, that it did not breach the agreement and/or is not obligated to pay Express under the agreement.

On October 24, Express filed a motion to dismiss and motion to sever, arguing that a forum selection clause in the transportation agreement identified Idaho as the proper forum.[3] Express also requested severance of Redline's claims against it from those against KDS. Respondent denied the motion to dismiss without an evidentiary hearing, and further denied Express's motion for reconsideration. This proceeding followed.

## PREREQUISITES TO MANDAMUS

Mandamus is an extraordinary remedy. ***In re Sw. Bell Tel. Co., L.P.***, 235 S.W.3d 619, 623 (Tex. 2007) (orig. proceeding). A writ of mandamus will issue only when the relator has no adequate remedy by appeal and the trial court committed a clear abuse of discretion. ***In re Cerberus Capital Mgmt., L.P.***, 164 S.W.3d 379, 382 (Tex. 2005) (orig. proceeding). The relator has the burden of establishing both prerequisites. ***In re Fitzgerald***, 429 S.W.3d 886, 891 (Tex. App.—Tyler 2014, orig. proceeding.).

A trial court's determination of the validity of a forum-selection clause is a question of law subject to de novo review by an appellate court. ***J.M. Davidson, Inc. v. Webster***, 128 S.W.3d 223, 227 (Tex. 2003); ***Clark v. Power Mktg. Direct, Inc.***, 192 S.W.3d 796, 798 (Tex. App.—Houston [1st Dist.] 2006, no pet.). And a trial court abuses its discretion when it fails to properly interpret or apply a forum-selection clause. ***In re Lisa Laser USA, Inc.***, 310 S.W.3d

---

[3] According to a notice of removal Express filed in the United States District Court for the Eastern District of Texas, Tyler Division, Redline filed a similar action against Express on April 15, 2022, in a Gregg County district court. On September 8, 2022, Redline filed a notice of nonsuit without prejudice in the federal court.

880, 884 (Tex. 2010) (orig. proceeding).[4] An appellate remedy is inadequate when a trial court improperly refuses to enforce a forum-selection clause because allowing the trial to go forward will "vitiate and render illusory the subject matter of an appeal"—i.e., trial in the proper forum. *Id*. Thus, mandamus relief is available to enforce an unambiguous forum-selection clause in a contract. *Id*.; *see In re Nationwide Ins. Co. of Am.*, 494 S.W.3d 708, 712 (Tex. 2016) (orig. proceeding). However, in determining whether the trial court abused its discretion in resolving underlying factual matters or matters committed to the trial court's discretion, we may not substitute our judgment for that of the trial court and may not disturb the trial court's decision unless it is shown to be arbitrary and unreasonable. *Walker v. Packer*, 827 S.W.2d 833, 839–40 (Tex.1992) (orig. proceeding). Therefore, to show an abuse of discretion in those matters, the relator must establish that the trial court could reasonably have reached only one decision and it did not do so. *Id.* at 840.

## FORUM-SELECTION CLAUSE

Express contends that Respondent abused his discretion by denying its motion to dismiss because Redline is bound by the transportation agreement, Redline's lawsuit is a dispute under the transportation agreement, the transportation agreement's forum selection clause mandates that suit be brought in Idaho, and the forum selection clause must be enforced.

### Applicable Law

A contractual forum-selection clause is generally enforceable in Texas. *Nationwide Ins. Co. of Am.*, 494 S.W.3d at 712. The party seeking to enforce a contractual forum-selection clause carries the initial burden of establishing that the parties entered into an agreement designating an exclusive forum, and the agreement applies to the claims involved, or in other words, that the claims come within the clause's scope. *Sullivan v. Microsoft Corp.*, 618 S.W.3d 926, 931 (Tex. App.—El Paso 2021, no pet.). Where a party seeks to enforce a forum-selection clause against a non-signatory, that party has the additional burden to prove the theory upon which it relies to bind the non-signatory to the contract. *Lujan v. Alorica*, 445 S.W.3d 443, 449 (Tex. App.—El Paso 2014, no pet.). A forum-selection clause in an agreement may bind a

---

[4] The Texas Supreme Court has applied Texas law in mandamus cases wherein the parties seek to enforce a forum-selection clause, even if the contract contains a choice-of-law clause selecting the application of another state's substantive law. *In re Lisa Laser USA, Inc.*, 310 S.W.3d 880, 883 n.2 (Tex. 2010) (orig. proceeding).

nonsignatory if the party seeking enforcement can show that the nonsignatory is bound by that agreement under recognized contract or agency principles. *Carlile Bancshares, Inc. v. Armstrong*, No. 02-14-00014-CV, 2014 WL 3891658, at \*7 (Tex. App.—Fort Worth Aug. 7, 2014, no pet.) (mem. op.); *see also In re Kellogg Brown & Root, Inc.*, 166 S.W.3d 732, 739 (Tex. 2005) (orig. proceeding) (listing such principles as (1) incorporation by reference; (2) assumption; (3) agency; (4) alter ego; (5) equitable estoppel; and (6) third-party beneficiary).

If the party seeking enforcement establishes these prerequisites, the forum-selection clause is presumed valid and enforceable, and the burden then shifts to the party opposing enforcement to make a "strong showing" overcoming the presumption. *Sullivan*, 618 S.W.3d at 931. Under this framework, the trial court abuses its discretion by refusing to enforce a forum selection clause "absent clear evidence that '(1) enforcement would be unreasonable or unjust, (2) the clause is invalid for reasons of fraud or overreaching, (3) enforcement would contravene a strong public policy of the forum where the suit was brought, or (4) the selected forum would be seriously inconvenient for trial.'" *Nationwide Ins. Co. of Am.*, 494 S.W.3d at 712 (quoting *In re Lyon Fin. Servs., Inc.*, 257 S.W.3d 228, 231–32 (Tex. 2008) (per curiam)); *Pappie v. Batra*, No. 14-21-00290-CV, 2022 WL 1671100, at \*9 (Tex. App.—Houston [14th Dist.] May 26, 2022, no pet.) (mem. op.). This is a heavy burden to overcome. *Rieder v. Woods*, 603 S.W.3d 86, 93 (Tex. 2020). Absent these circumstances, a trial court should enforce a mandatory forum-selection clause by granting a motion to dismiss. *Nationwide Ins. Co. of Am.,* 494 S.W.3d at 712.

Trial courts often look to cases on arbitration for guidance involving forum-selection clauses. *Pinto Tech. Ventures, LP v. Sheldon*, 526 S.W.3d 428, 437 (Tex. 2017). A trial court conducts a summary proceeding to determine the applicability of an arbitration clause based on the parties' affidavits, pleadings, discovery, and stipulations. *In re Longoria*, 470 S.W.3d 616, 630 (Tex. App.—Houston [14th Dist.] 2015, no pet.). The procedure is similar to a motion for summary judgment and is subject to the same evidentiary standards. *Id*.; *see also HMT Tank Serv. LLC v. Am. Tank & Vessel, Inc.*, 565 S.W.3d 799, 805-06 (Tex. App.—Houston [14th Dist.] 2018, no pet.) ("[A]ttempted enforcement of a forum-selection clause involves an evidentiary showing by one or multiple parties[.]"). A trial court may summarily decide whether an arbitration or forum-selection clause applies based solely on the parties' submissions; however, if the material facts necessary to determine the issue are controverted, by an opposing

4

affidavit or otherwise admissible evidence, the trial court must conduct an evidentiary hearing to determine the disputed material facts. ***Jack B. Anglin Co. v. Tipps***, 842 S.W.2d 266, 269 (Tex. 1992).[5]

## Applicable Facts

The dispatch agreement between Redline and Alexander states that Redline "desires to retain Kristin's Dispatch Services by executing a limited Power of Attorney form to find and secure freight for [Redline] and dispatch [Redline's] equipment." The services Redline wished Alexander to perform included (1) locating, negotiating, and booking of freight, (2) handling all broker/shipper paperwork, (3) dispatching and following up loads until completed, and (4) 24/7 support. The parties limited the power of attorney to the "specific purpose of contracting loads of freight to be hauled by Redline Transport" and gave KDS authority to

> …do and perform all and every act and thing whatsoever necessary to be done in and about the specific and limited terms (set out herein) as fully, to all intents and purposes, as might or could be done if personally present, with full power of substitution and revocation, hereby ratifying and confirming all that said attorney shall lawfully do or cause to be done by virtue thereof.

In a declaration attached to Express's motion to dismiss, Alexander explained that she served as an "intermediary between brokerages and Redline's truckers" and communicated with brokers to set up accounts, sign contracts and rate confirmations, coordinate trucks with loads, and load/unload. She received, signed, and sent rate confirmations to and from Express, coordinated drivers to haul the loads Redline contracted to carry, and updated Express on the status and arrival of loads, payments, and other matters regarding loads.

Candace Stephens, sole member and manager of Express, also provided a declaration, in which she explained that "Redline is one of Express' contract motor carriers that is engaged in providing transportation of property as a contract carrier." According to Stephens, the parties' relationship first began when they signed a transportation agreement on April 19, 2016. Regarding the August 2020 agreement, Stephens stated that "Express sent the Agreement to

---

[5] Redline did not present any evidence in its response to Express's motion to dismiss, and Respondent did not hold an evidentiary hearing on said motion, exemplifying a belief that the material facts were uncontroverted. However, Respondent subsequently ruled against Express, implying a finding that even those uncontroverted facts were not sufficient to meet Express's initial burden.

Redline—through Ms. Alexander—because Express updated its contract terms and was updating each carrier client to the updated contract terms."

On August 6, 2020, Alexander signed the updated transportation agreement. According to her declaration, Alexander "was authorized to sign such agreements as part of [her] position as a representative of Redline[.]" The agreement's first paragraph states that it is between Express and Redline but the agreement also contains the carrier number for Roll Out Logistics, Inc. And when signing the agreement, Alexander listed Roll Out, another company for whom she works, as the carrier. In her declaration, Alexander explained that she accidentally included Roll Out's motor carrier number and wrote Roll Out's name on the signature line even though she knew the contract was for Redline. She stated, "I just went on autopilot and wrote the wrong number and wrong name at the bottom." She states that she understood Express sent the agreement for Redline, not Roll Out, and that she was signing the agreement on behalf of Redline. Alexander maintains that, using her Redline email address, she emailed the agreement and a document called "Red Line," which included Redline's certificate of liability insurance, motor carrier certificate, and W-9, to Express. Stephens confirmed receipt of these documents. Alexander added that after she returned the transportation agreement, Express sent a rate confirmation for Redline, which she signed and returned to Express. She further stated that a load was scheduled for that rate confirmation. She "understood this transaction to be the result of Redline agreeing to update its contract to match Express' new terms." Stephens likewise stated that Express sent "Redline—through Ms. Alexander—a rate confirmation that was returned. Express then arranged for and scheduled a load to be delivered by Redline under the Agreement."

According to Stephens, Express and Redline operated under the updated agreement without issue and Express brokered shipments for Redline through KDS. She states that the agreement automatically renewed in August 2021 when no one terminated the agreement. Express communicated with Redline during this period, rather than Alexander, for billing purposes because Redline handled its own billing.

Stephens explained that Redline provided services to Diamond C Trailers, Express's biggest client. In August 2021, as maintained by Stephens, Express learned that Redline was "back-soliciting" Diamond by contracting directly with Diamond to carry loads. But the transportation agreement contains a provision prohibiting Redline from soliciting Express's clients for Redline's benefit. Stephens stated that a Diamond employee confirmed the

solicitation and provided a business card left by one of Redline's agents or employees. Express subsequently learned that Diamond's outbound shipping manager accepted Redline's solicitation and began contracting directly with Redline for its outbound shipping needs. Consequently, Express no longer handled Diamond's outbound shipments and lost profits. Stephens stated that, on January 6, 2022, Express demanded that Redline stop back-soliciting Diamond and pay twenty percent of each load as a result of breaching the agreement.

## Analysis

The transportation agreement contains the following forum selection clause:

> **10. Miscellaneous**: By signing, the contracting party acknowledges that Express Delivery Enterprise, LLC is based in Bonner County, Idaho, and that by contracting with Express Delivery Enterprise, LLC, the contracting party is transacting business in Bonner County, Idaho. The contracting party agrees to submit to personal jurisdiction in Bonner County, Idaho, and agrees that all disputes under this contract shall have the proper venue and jurisdiction in Bonner County, Idaho, and that the laws for the State of Idaho shall apply, or as necessary, venue shall be in the U.S. District Court of Idaho, and U.S. federal laws shall apply….

Express contends Respondent abused his discretion by failing to dismiss the lawsuit because (1) Redline is bound by the transportation agreement, (2) Redline's lawsuit constitutes a dispute under the agreement, (3) the forum selection clause mandates that suit be filed in Idaho, (4) and the forum selection clause must be enforced.

We note initially that based upon the record before us, Respondent's denial of Express's motion to dismiss was based upon a conclusion that Express failed to meet its initial burden. Specifically, because Redline never argued that any of the factors against enforcement of a valid forum-selection clause applied, but Respondent still found in Redline's favor, he must have found that the forum-selection clause did not enjoy the presumption of validity. *Sullivan*, 618 S.W.3d at 931. Therefore, Respondent must necessarily have concluded that Express did not prove either the parties' entrance into a contract containing a forum-selection clause (including its theory under which Redline was bound to same) or that the claims at issue did not come within the scope of the clause. *Id.*

### Whether the Transportation Agreement Binds Redline

Express asserts that the transportation agreement binds Redline because Alexander had authority to execute the agreement on Redline's behalf as its agent and did so. Express further contends that the agreement is binding on Redline because Redline ratified the agreement.

7

Conversely, Redline contends that it is not bound by the agreement because Alexander included an incorrect carrier number and typed the name of the wrong company in the signature block, and because she lacked authority to bind Redline to a contract like the transportation agreement.

Generally, a forum-selection clause may be enforced only by and against a party bound by the agreement containing the clause. *Pinto Tech. Ventures*, 526 S.W.3d at 443. But a party may bind itself to a contract that did not previously bind it, and that it had a right to repudiate, by ratification. *Thomson Oil Royalty, LLC v. Graham*, 351 S.W.3d 162, 165 (Tex. App.—Tyler 2011, no pet.). "Ratification occurs when a party with full knowledge of the contract recognizes its validity, such as by acting or performing under the contract, affirmatively acknowledging the contract, or retaining benefits under the contract." *Tex. Health Harris Methodist Hosp. Fort Worth v. Featherly*, 648 S.W.3d 556, 576 (Tex. App.—Fort Worth 2022, pet. denied). Stated another way, any act inconsistent with an intent to avoid a contract has the effect of ratifying the contract. *Barker v. Roelke*, 105 S.W.3d 75, 85-86 (Tex. App.—Eastland 2003, pet. denied). Once a party ratifies an agreement, that party may not later withdraw its ratification and seek to avoid the contract. *BPX Operating Co. v. Strickhausen,* 629 S.W.3d 189, 196 (Tex. 2021). Further, ratification extends to the entire transaction; a party may not ratify those parts of a contract that are beneficial to it and disavow those that are detrimental to it. *Id.* Ratification is often treated as a mixed question of law and fact; when the facts are uncontroverted, however, a court may decide the question of ratification as a matter of law. *Id.*

Agency is a consensual relationship between two parties "by which one party acts on behalf of the other, subject to the other's control." *Reliant Energy Services, Inc. v. Cotton Valley Compression, L.L.C.*, 336 S.W.3d 764, 782-83 (Tex. App.—Houston [1st Dist.] 2011, no pet.). An agent may possess general authority to act on behalf of the principal or may have only limited authority to transact a limited number of tasks assigned to her, which gives the agent the power to engage in conduct in furtherance of those duties. *Armendariz v. Hudgens*, 618 S.W.3d 750, 759 (Tex. App.—El Paso 2020, no pet.). A principal is responsible for the acts of its agent when the agent acts within the scope of her authority, whether general or limited. *Id.* An agent's knowledge is imputed to the principal if the agent's acts are within the scope of her authority and are related to such matters over which such authority extends. *Triad Contractors, Inc. v. Kelly*, 809 S.W.2d 683, 686 (Tex. App.—Beaumont 1991, writ denied). "It is immaterial that the

8

principal has not actually been informed of the particular facts under consideration[.]" ***Williams v. Jennings***, 755 S.W.2d 874, 883 (Tex. App.—Houston [14th Dist.] 1988, writ denied).

"A power of attorney is a written instrument by which one person, the principal, appoints another person, the attorney-in-fact, as agent and confers on the attorney-in-fact the authority to perform certain specified acts on behalf of the principal." ***Comerica Bank-Tex. v. Tex. Commerce Bank Nat'l Ass'n***, 2 S.W.3d 723, 725 (Tex. App.—Texarkana 1999, pet. denied). At the time Alexander signed the transportation agreement, Redline had granted KDS a broad power of attorney authorizing it to "do and perform *all and every act and thing whatsoever necessary*" for the limited purpose of contracting loads of freight to be hauled by Redline. (emphasis added). The document does not impose any limitations on KDS's authority in this area. Although Redline now contends, seemingly for the first time, that Alexander lacked authority to sign the transportation agreement on its behalf, it does not explain how this action exceeds the authority it granted Alexander, nor does it present any evidence in support of its argument. The transportation agreement is a contract under which Express would entrust loads of cargo to Redline for delivery. From the plain and unambiguous language of the dispatch agreement, Redline intentionally conferred authority to Alexander, as owner of KDS, to take any necessary actions in Redline's place (that is, as its agent) to contract for loads of freight to be hauled by Redline. *See **Armendariz***, 618 S.W.3d at 759; ***First Nat. Bank in Dallas v. Kinabrew***, 589 S.W.2d 137, 145 (Tex. Civ. App. Tyler 1979, writ ref'd n.r.e.) ("The rule that the powers of the attorney in fact are measured strictly by the terms of the grant and necessary implications therefrom … does not preclude the court from ascertaining the object of the language."); *see also **URI, Inc. v. Kleberg Cty.***, 543 S.W.3d 755, 763 (Tex. 2018) (presence of ambiguities and the interpretation of an unambiguous contract are questions of law reviewed de novo).

Although mistakes in a contract may provide grounds for reformation of the document, or render the contract voidable, we need not determine the precise impact of Alexander's errors in executing the transportation agreement. *See **Donias v. Old Am. Cty. Mut. Fire Ins. Co.***, 649 S.W.3d 789, 794 (Tex. App.—El Paso 2022, no pet.); ***Neese v. Lyon***, 479 S.W.3d 368, 378 (Tex. App.—Dallas 2015, no pet.). Even if the errors meant that the contract was not binding on Redline at the time of signing, the available record shows that Redline ratified the agreement by its subsequent conduct for more than a year after Alexander signed the updated agreement. *See **Lozada v. Farrall & Blackwell Agency, Inc.***, 323 S.W.3d 278, 292 (Tex. App.—El Paso 2010,

no pet.) ("[R]atification occurs when a principal supports, accepts, or follows through on the efforts of a purported agent.").

Redline alleges that it was not aware of the transportation agreement because Alexander did not transmit it to Redline as required by the dispatch agreement. But because we conclude that Alexander's actions in executing the transportation agreement were within the scope of and related to her authority as Redline's agent, her knowledge of that contract is imputed to Redline. *See Triad Contractors, Inc.*, 809 S.W.2d at 686; *Thermo Prod. Co. v. Chilton Indep. Sch. Dist.*, 647 S.W.2d 726, 733 (Tex. App.—Waco 1983, writ refused n.r.e) (ratification may arise when evidence of facts from which knowledge of agent's action can reasonably be imputed to the principal is present). Following execution of the transportation agreement, Redline delivered loads of cargo for Express for over a year, communicated with Express regarding billing for those deliveries, and received payment under the terms of the transportation agreement—thereby accepting the benefits of Alexander's actions. Further, the limited power of attorney Redline executed in favor of KDS explicitly stated that it was thereby "ratifying and confirming all that [KDS] shall lawfully do or cause to be done" pursuant to the grant of authority. All these facts (which remain uncontroverted by Redline) constitute performance under and affirmation of the transportation agreement, and therefore ratification of same. As such, we conclude that the record reasonably supports only one conclusion—Redline is a party to the transportation agreement, and is bound by its terms, including the forum-selection clause at issue.[6] *See Lozada*, 323 S.W.3d at 292.

### *Exclusive Forum Designation and Applicability*

As aforementioned, a forum-selection clause is presumed to be valid and enforceable if the party seeking enforcement establishes that (1) the parties entered into an agreement designating an exclusive forum, and (2) the forum-selection clause applies to the claims involved. *Sullivan*, 618 S.W.3d at 931. Forum-selection clauses that select an exclusive forum for litigation are mandatory and therefore enforceable, while those that do not foreclose the possibility that other courts may also have jurisdiction are merely permissive. *See, e.g., Sw. Intelecom, Inc. v. Hotel Networks Corp.*, 997 S.W.2d 322, 324–25 (Tex. App.—Austin 1999,

---

[6] Because neither party gave notice that they wished to terminate the transportation agreement, it automatically renewed for a subsequent one-year term in August of 2021 and remained in force at the time of the events made the subject of Redline's lawsuit.

10

pet. denied) (statement that "The Parties stipulate to jurisdiction and venue in Ramsey County, Minnesota," rendered jurisdiction and venue proper, but not exclusive, in Ramsey County); *Mabon Ltd. v. Afri-Carib Enterprises, Inc.*, 29 S.W.3d 291, 297 (Tex. App.—Houston [14th Dist.] 2000, no pet.) (clause stating that "the Federal District of Nigeria shall have venue" only indicates Nigerian courts may be *acceptable* venue); *but see* **Phoenix Network Techs. (Eur.) Ltd. v. Neon Sys., Inc.**, 177 S.W.3d 605, 615 (Tex. App.—Houston [1st Dist.] 2005, no pet.) (clause providing that "*the* venue for resolution of any disputes arising out of this Agreement *shall* be the United Kingdom" mandatory) (emphasis added).

Many of the opinions wherein a Texas court found a forum-selection clause permissive differ significantly in wording from the clause at issue here. The forum-selection clause in this case plainly requires that claims within its scope be litigated in Bonner County, Idaho. Although forum-selection clauses may be mandatory or permissive, the use of the word "shall" generally indicates a mandatory requirement. *See* **Phoenix Network Techs.**, 177 S.W.3d at 615. Additionally, the clause states that "*the* proper venue and jurisdiction" for suit will be in Bonner County, rather than only *a* venue for suit; use of the definite article indicates that the parties intended for Bonner County to be the singular proper venue.[7] *Id.*; *see also* **Target Strike, Inc. v. Strasburger & Price, L.L.P.**, No. 05-18-00434-CV, 2018 WL 6040022, at *11 (Tex. App.—Dallas Nov. 19, 2018, no pet.) (mem. op.) (when a clause indicating consent to jurisdiction also refers to venue, specifications of a forum can be sufficient to make the clause mandatory). The forum-selection clause at issue here, with its use of both "shall" as mandatory language and "the" as a definitive article, most closely resembles the language of the clause in **Phoenix Network Techs.** For these reasons, we conclude that the forum-selection clause in the Transportation Agreement designates an exclusive forum, is therefore mandatory, and is consequently enforceable.

In determining whether certain claims fall within the scope of a forum selection clause, a reviewing court should engage in a "common sense examination of the claims and the forum selection clause to determine if the clause covers the claims." **Lisa Laser USA, Inc.**, 310 S.W.3d

---

[7] One of our sister courts previously addressed the permissive nature of a forum-selection clause which designated "the State of Colorado" as the proper jurisdiction and Denver as "the proper venue" for any action. In finding that the clause at issue was permissive, the court observed that the clause *did not* contain "mandatory language such as 'shall,'" and that usage of the definitive article "the" *alone* "does not express the clear intent that the clause is exclusive." *In re Agresti*, No. 13-14-00126-CV, 2014 WL 3408691, at *7 (Tex. App.—Corpus Christi May 29, 2014, writ denied) (mem. op.).

at 884. In the instant case, the forum-selection clause applies to "all disputes under" the transportation agreement. A commonsense examination of the forum-selection clause in its entirety and the substance of the claims asserted in the underlying lawsuit leaves no question that the parties' dispute arises under the transportation agreement. Redline seeks a judgment declaring *either* that Redline is not a party to the transportation agreement *or* that Redline did not breach the non-solicitation covenant therein and is not obligated to pay Express for any such breach. To issue either judgment, the court must determine Redline's obligations pursuant to the transportation agreement. Redline itself describes its cause of action as a controversy "regarding the construction and validity of the Agreement and the parties' rights and obligations thereunder." *See **Pinto Tech. Ventures***, 526 S.W.3d at 441 (dispute was within scope of forum-selection clause where parties' relationship was governed by agreement, grievances emanated from existence and operation of agreement, and resolution of case involved determining validity of agreement). Because the dispute between Relator and Redline arises under their contractual relationship (rather than out of general obligations imposed by law), even to the extent that Redline disputes the transportation agreement applies to the parties' business relationship, the present reasonable conclusion is that the claims in the underlying lawsuit are within the scope of the forum selection clause. *Id.* at 442.

## Summation

Having concluded that Redline is bound by the transportation agreement, and that the underlying dispute between Express and Redline constitutes a dispute under the agreement, we likewise conclude that Respondent abused his discretion in failing to enforce the forum-selection clause. Because Express established the prerequisites for the forum-selection clause to be presumed valid and enforceable, the burden then shifted to Redline to make a "strong showing" to overcome the presumption. *See **Sullivan***, 618 S.W.3d at 931. Specifically, Redline bore the "heavy burden" to present clear evidence that "(1) enforcement would be unreasonable or unjust, (2) the clause is invalid for reasons of fraud or overreaching, (3) enforcement would contravene a strong public policy of the forum where the suit was brought, or (4) the selected forum would be seriously inconvenient for trial." ***Nationwide Ins. Co. of Am.***, 494 S.W.3d at 712. Redline did not address these issues before the trial court and does not address them in its response to Express's petition for writ of mandamus; therefore, Redline does not present the requisite strong showing to overcome the presumption of validity.

12

Because Redline has not overcome the presumption that the forum-selection clause in the transportation agreement is valid and enforceable against it, Respondent abused his discretion in failing to enforce the forum-selection clause by denying Express's motion to dismiss.

## DISPOSITION

The Texas Supreme Court has held that a trial court must enforce a mandatory forum-selection clause and that the failure to do so constitutes an abuse of discretion. Because the forum-selection clause governed the dispute between Express and Redline, and Redline did not meet its burden to overcome enforcement, we ***conditionally grant*** Express's petition for a writ of mandamus. We direct Respondent to vacate his order denying Express's motion to dismiss and, in its stead, to sign an order granting Express's motion to dismiss.[8] The writ will issue only if the trial court fails to do so ***within ten days of the date of the opinion and order***. The trial court shall furnish this Court, within the time of compliance with this Court's opinion and order, a certified copy of the order evidencing such compliance. We ***lift*** our stay of March 31, 2023.

**GREG NEELEY**
Justice

Opinion delivered July 21, 2023.
*Panel consisted of Worthen, C.J., Hoyle, J., and Neeley, J.*

---

[8] Although Express requested severance of Redline's claims against KDS in its motion before the trial court, it does not request that relief from this Court.



# COURT OF APPEALS

# TWELFTH COURT OF APPEALS DISTRICT OF TEXAS

# ORDER

**JULY 21, 2023**

**NO. 12-23-00088-CV**

**EXPRESS DELIVERY ENTERPRISE LLC,**
Relator
V.

**HON. VINCENT DULWEBER,**
Respondent

---

### ORIGINAL PROCEEDING

---

ON THIS DAY came to be heard the petition for writ of mandamus filed by Express Delivery Enterprise LLC; who is the relator in appellate cause number 12-23-00088-CV and the defendant in trial court cause number 2022-1438-CCL2, pending on the docket of the County Court at Law No. 2 of Gregg County, Texas. Said petition for writ of mandamus having been filed herein on March 30, 2023, and the same having been duly considered, because it is the opinion of this Court that the petition for writ of mandamus be, and the same is, **conditionally granted**.

And because it is further the opinion of this Court that the trial judge will act promptly and vacate his order of November 28, 2022 in which he denied Express's motion to dismiss and

14

in its stead to issue an order granting the motion; the writ will not issue unless the **HONORABLE VINCENT DULWEBER** fails to comply with this Court's order within ten (10) days from the date of this order.

Greg Neeley, Justice.
*Panel consisted of Worthen, C.J., Hoyle, J. and Neeley, J.*